[No. B073886. Second Dist., Div. Three. June 10, 1993.]

JAMES LOONEY et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
MEDICAL CENTER OF NORTH HOLLYWOOD et al., Real Parties in
Interest.

## COUNSEL

Raymond L. Henke for Petitioners.

No appearance for Respondent.

Bonne, Bridges, Mueller, O'Keefe & Nichols, Rushfeldt, Shelley & Drake, Greines, Martin, Stein & Richland and Kent L. Richland for Real Parties in Interest.

## OPINION

**CROSKEY, J.**—In this proceeding, petitioners[1] seek a writ of mandate to compel the trial court to consider and rule on the merits of their motion,

---

[1] The petitioners in this matter are James Looney (Super. Ct. L.A. County, No. BC040311), Roderick Garcia (Super. Ct. L.A. County, No. BC041550), Herbert Dreiwitz (Super. Ct. L.A. County, No. BC044339), Mark Addy (Super. Ct. L.A. County No. BC044700) and Timothy Johnson (Super. Ct. L.A. County, No. BC044726). These cases were consolidated by the trial court on December 1, 1992. There are apparently at least two other "related cases" pending in the trial court (Super. Ct. L.A. County, Nos. BC041551 [Clarica Laubscher] and BC044727

made pursuant to Code of Civil Procedure section 425.13, subdivision (a),[2] for leave to amend their complaints to allege claims for punitive damages against the Medical Center of North Hollywood, Valentine Birds, M.D., and Stephen Herman, M.D. (hereinafter collectively the defendants).[3] Petitioners allege claims for both medical negligence and fraud in the treatment of their conditions. The trial court denied their motion because it was not made within nine months of the date when the case was "first set for trial"; such date had previously been set on a preference basis pursuant to petitioners' motion under section 36, subdivisions (d) and (e).[4]

Because we conclude that the time limitations set out in section 425.13 cannot be applied so as to unreasonably deprive a plaintiff of a fair opportunity to comply with the requirements of that section, we shall grant the writ.

## FACTUAL AND PROCEDURAL BACKGROUND

The issues raised by the instant petition are entirely procedural and are based upon the voluminous pleading and law and motion record developed

[Helen MacEachron]) which were inadvertently included in the alternative writ of mandate which we issued on March 31, 1993. However, the plaintiffs in those two related cases are not in fact petitioners in this matter.

[2]Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

Section 425.13, subdivision (a), (hereinafter simply section 425.13), provides: "In any action for damages arising out of the professional negligence of a health care provider, no claim for punitive damages shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed. The court may allow the filing of an amended pleading claiming punitive damages on a motion by the party seeking the amended pleading and on the basis of the supporting and opposing affidavits presented that the plaintiff has established that there is a substantial probability that the plaintiff will prevail on the claim pursuant to Section 3294 of the Civil Code. The court shall not grant a motion allowing the filing of an amended pleading that includes a claim for punitive damages if the motion for such an order is not filed within two years after the complaint or initial pleading is filed or not less than nine months before the date the matter is first set for trial, whichever is earlier."

[3]In the several actions filed by petitioners there are a number of additional defendants who have been named and served. However, it is apparently only these three defendants against whom punitive damages are sought.

[4]Section 36, subdivision (d) provides: "In its discretion, the court may also grant a motion for preference served with the memorandum to set or the at-issue memorandum and accompanied by clear and convincing medical documentation which concludes that one of the parties suffers from an illness or condition raising substantial medical doubt of survival of that party beyond six months, and which satisfies the court that the interests of justice will be served by granting the preference."

Section 36, subdivision (e) provides: "Notwithstanding any other provision of law, the court may in its discretion grant a motion for preference served with the memorandum to set or the at-issue memorandum and accompanied by a showing of cause which satisfies the court that the interests of justice will be served by granting this preference."

in the trial court. There is no significant dispute between the parties as to the following chronology of events.

In December 1991, the petitioners filed the operative pleadings in which there are alleged, inter alia, claims for professional negligence, breach of express and implied warranty, product liability, intentional infliction of emotional distress and fraud. Each of these complaints included allegations of malice, oppression and fraud in support of a prayer for punitive damages.[5]

Prior to March 20, 1992, the defendants moved to strike petitioners' punitive damages allegations for their failure to seek leave to amend their pleadings to assert such allegations, as required by section 425.13. On that date, the court denied defendants' motion on the ground that petitioners' punitive damage claims were based not on "professional negligence," but rather on intentional torts. The court relied on *Bommareddy* v. *Superior Court* (1990) 222 Cal.App.3d 1017 [272 Cal.Rptr. 246], which had held that the term "professional negligence," as used in section 425.13 was a term of art and did "not include intentional torts . . . even when occurring during the provision of medical services." (*Id.* at p. 1024.)[6]

On May 8, 1992, following this decision by the trial court, petitioners moved for a trial preference pursuant to section 36, subdivisions (d) and (e), on the grounds that petitioners' condition was such as to raise a substantial medical doubt as to their survival beyond six months and that the interests of justice would be served by the grant of such a preference. This motion was granted on May 14, 1992, and the case was assigned a trial date of August 10, 1992. Defendants' subsequent motion for reconsideration of this ruling was denied.

On July 31, 1992, the Supreme Court overruled *Bommareddy* in *Central Pathology Service Medical Clinic, Inc.,* v. *Superior Court* (1992) 3 Cal.4th 181, 190-192 [10 Cal.Rptr.2d 208, 832 P.2d 924], and held that whether "professional negligence" included intentional torts was not the question. "Rather, the trial court must determine whether a plaintiff's action for damages is one '*arising out of* the professional negligence of a health care

---

[5]Although petitioners devote a substantial portion of their briefs to a review of the facts supporting their claim that the defendants engaged in acts of medical fraud and "quackery" in the treatment of petitioners' AIDS and related conditions, we have no reason to consider or discuss such matters. We assume without deciding that petitioners can demonstrate to the trial court some evidence which will support their claim to punitive damages. Whether it is sufficient to meet the threshold imposed by section 425.13 is a matter for resolution by the trial court.

[6]On October 30, 1990, the Supreme Court had denied review of the *Bommareddy* decision.

provider.' " (*Id.* at p. 191, italics in original.)[7] Defendants quickly responded to this change in the applicable law by filing a second motion to strike petitioners' punitive damage claims because of their failure to comply with section 425.13. On August 21, 1992, the trial court denied this motion on the ground that to give retroactive effect to the decision in *Central Pathology* would deprive petitioners of the benefits of their section 36 preferential trial date.

On September 21, 1992, defendants sought a writ of mandate from this court arguing that the trial court's decision to give *Central Pathology* only prospective application was error. We held that defendants' position was correct, citing the general rule that a judicial decision operates retrospectively. (*Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1207 [246 Cal.Rptr. 629, 753 P.2d 585].) We also noted that the only exceptions to that rule, even when the judicial decision changes existing law, are when retroactive application "would raise substantial concerns about the effects of the new rule on the general administration of justice, or would unfairly undermine the reasonable reliance of parties on the previously existing state of the law." (*Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973, 983 [258 Cal.Rptr. 592, 772 P.2d 1059].) We concluded that there were no such concerns presented by this case.[8] We therefore granted the requested writ on September 24, 1992. However, we took considerable pains to comment on the very special circumstances presented by this case.

In our order granting the writ, we stated: "The respondent court correctly identified the extreme prejudice to plaintiffs in striking the punitive damage allegations at this late stage of the litigation. Although the respondent court specified the health of the plaintiffs and the order granting trial priority pursuant to . . . section 36, an exception to the retrospective application of *Central Pathology* . . . cannot be created for individuals. However, the

---

[7]The Supreme Court expanded on this point by noting: "Based on the language of the statute and its legislative history, we conclude that an action for damages *arises out of* the professional negligence of a health care provider if the injury for which damages are sought is *directly related* to the professional services provided by the health care provider." (*Central Pathology Service Medical Clinic, Inc.* v. *Superior Court, supra,* 3 Cal.4th at p. 191, italics added.)

[8]That was true because, as our order made clear (see below), we anticipated that the trial court would consider and rule on the section 425.13 motion which our order encouraged petitioners to make. Thus, petitioners were not to be prejudiced by a retroactive application of *Central Pathology*. It was our intent, albeit unstated, that petitioners would have an opportunity to satisfy the prepleading evidentiary hurdle of section 425.13 without regard to the nine-month time limitation. However, because that issue had not been raised, or *expressly* considered by us in our prior order, it was not directly resolved. For that reason, we reject petitioners' arguments based on the theory of an "implied" law of the case. (See *Wood* v. *Elling* (1977) 20 Cal.3d 353, 360 [142 Cal.Rptr. 696, 572 P.2d 755].)

*prejudice to plaintiffs can be minimized since discovery on the punitive damage claims has been conducted*[9] and procedures are available to shorten time for hearing on motions to reassert the punitive damage allegations and to obtain a priority discovery schedule in order to conduct any additional discovery which may be needed. [¶] . . . We therefore grant the petition for writ of mandate without prejudice to plaintiffs' motions to reassert the punitive damage allegations utilizing the procedures required by section 425.13. [¶] Let a peremptory writ of mandate issue directing the respondent court to vacate its order denying defendants' motion to strike the punitive damage allegations and to enter in its place an order granting the motion *without prejudice to plaintiffs' motions to immediately seek leave of the court to reassert the punitive damage allegations pursuant to the provisions of section 425.13.*" (Italics in the original.) We concluded our order with the provision that, "*In order to prevent frustration of the rights of plaintiffs provided by section 36*, the decision of this court shall be final when filed." (Italics added.) However, such finality was nonetheless delayed until December 8, 1992, when our remittitur issued to the trial court.[10]

Petitioners promptly reacted to our order that they have the opportunity to "immediately seek leave" to amend their pleadings pursuant to the provisions of section 425.13; on December 23, 1992, they filed a 67-page motion, together with 27 exhibits, in support of their contention that their punitive claims had a "substantial probability" of success. This motion came on for hearing on January 14, 1993, and was vigorously opposed by the defendants.

After extensive argument, the trial court concurred with the defendants' position and ruled that the time limitations set out in section 425.13 were mandatory and therefore the motion had to be denied. The court emphasized

---

[9]During a colloquy with the court on August 19, 1992, counsel for defendants conceded that the punitive damage allegations had always been there and that the defendants had not "been lulled into not discovering that aspect of the case, [or] not doing things directed to meet the claim of punitive damages."

[10]This delay was occasioned by the defendants' petition for review by the Supreme Court of our order granting the writ. In their review petition, they argued that, "Ignoring this Court's mandate, the appellate court has permitted plaintiffs herein to plead punitive damages without complying with section 425.13's mandatory time limit. [¶] The Court of Appeal erred as a matter of law in providing plaintiffs with this belated and unjustified opportunity to seek punitive damages. Under the express, mandatory language of section 425.13, the trial court cannot grant such a motion 'if the motion . . . is not filed within two years after the complaint or initial pleading is filed *or not less than nine months before the date the matter is first set for trial, whichever is earlier.*' . . . Since plaintiffs failed to amend their pleadings within the nine-month period prior to [the first assigned trial date], they cannot seek to amend now. Thus, in inviting plaintiffs to 'utiliz[e] the procedures required by section 425.13,' the Court of Appeal's order apparently inadvertently permits plaintiffs to circumvent the plain, mandatory language of the statute." The Supreme Court denied review on November 10, 1992.

that while it was not happy about the result,[11] it nonetheless believed itself bound by the terms of section 425.13 which required any motion to amend to be made at least nine months before the date that the case "is first set for trial." In addition, it also relied on the language of our order of September 24 which had granted the defendants' writ petition without prejudice to a motion by petitioners "*utilizing the procedures required by section 425.13.*" The trial court expressly declined to rule on the merits of petitioners' section 425.13 motion.

On March 12, 1993, petitioners filed the instant petition for a writ of mandate which seeks to compel the trial court to vacate its order of January 14, 1993, and to consider and determine, on its merits, petitioners' motion to

---

[11]The comments made by the trial court in explaining its reasoning are instructive.

"The Court of Appeal issued a writ ordering this court to strike the punitive damages allegations in the complaint. The writ was granted without prejudice to plaintiffs making a motion to amend under or pursuant to C.C.P. 425.13. Plaintiffs now seek leave to amend the complaint to allege punitive damages against a health provider.

"This motion was filed on December 23, 1992. The first date set for trial of this matter was set for August 10, 1992. After plaintiffs' motion for preferential trial setting under C.C.P. 36 (D) [*sic*], was granted and the initial trial date was set, it become legally impossible for the plaintiffs to comply with the 9 months' provision of 425.13.

"The alternative for plaintiffs in this case and in all other gravely ill plaintiff's [*sic*] claims for damages, is to waive any claim for punitive damages, even where clearly merited or to file a complaint, wait 5 to 6 months, move for a preference in the 7th month, and obtain a trial date not sooner than the 4 months in order to safely comply' with the 9 month provisions of 425.13(A) [*sic*].

"Under these circumstances, plaintiffs, who may not survive beyond the 6 months' period . . . (C.C.P. 36 D [*sic*]), . . . must risk that death or total disability will not visit them before they seek leave to amend the complaint for punitive damages, and to get their day in court. Such a result is unconscionable, and is contrary to the reasons for the salutary provisions of C.C.P. 36 D [*sic*].

"The court has read and considered plaintiffs' reply to Medical Center of North Hollywood's memorandum of points and authorities in opposition to plaintiffs [*sic*] motion to amend to stayed [*sic*] claim for punitive damages filed by plaintiffs January 13, 1993. The court has also read the writ opinion granted September 24, 1992. The court disagrees with plaintiffs' argument that the Court of Appeal expressly or impliedly ruled that the plaintiffs could amend—could be allowed to amend the complaint.

"Rather, a plain reading of the writ of opinion [sic] indicates that the plaintiffs, without prejudice, could seek leave of the court to reassert the damages allegations pursuant to the provisions of section 425.13. The emphasis is, pursuant to the sections of 425.13. Nowhere in the opinion does the court specify or directly rule that the time provisions of 425.13, and in particular that the 9 months' [*sic*] provision of the statute did not apply in this case. That is to say, nowhere in the opinion does it say that the 9th month provisions of 425.13 did not apply, or that the plaintiffs had substantially complied with that provision.

"In light of the above, the court, therefore, rules that 425.13 applies to this case by virtue of the writ of the Court of Appeal, and that it requires that all such motions to amend to allege punitive damages against a health provider be brought no less than 9 months before the date first set for trial. This motion was not brought within that time limit. It is, therefore, untimely and must be denied because the time provisions of 425.13 are mandatory."

amend under section 425.13. On March 31, 1993, we issued an alternative writ and set the matter for hearing.

## ISSUES PRESENTED

This case presents two important issues for resolution. The first arises from the fundamental tension between two procedural statutes where compliance with one may make compliance with the other impossible. A motion made under section 425.13 is subject to a time limitation which, if enforced, may defeat the statutory right (under § 36) of an aged or terminally ill plaintiff to a preferential trial date. In such circumstances, can these statutes be reconciled or, at least, their application harmonized?

The second issue relates to the standard of proof to be applied by the trial court when it rules upon a motion made under section 425.13. At trial, a plaintiff seeking punitive damages must establish entitlement thereto by "clear and convincing" evidence. Must the trial court, in determining the existence of a substantial probability of plaintiff's success, take into account that standard?

## DISCUSSION

### 1. *Standard of Review and Relevant Rules of Statutory Construction*

■ Our task is to interpret and apply two statutes which, in the context of the facts before us, are in conflict. Such interpretation presents a question of law which is subject to de novo review. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].) In making such interpretation it is our burden to first ascertain the intent of the Legislature in order to ensure that we effectuate the purpose of the law. (*Brown* v. *Superior Court* (1984) 37 Cal.3d 477, 484 [208 Cal.Rptr. 724, 691 P.2d 272].) Every statute should be construed and applied "with reference to the whole system of law of which it is a part so that all may be harmonized and have effect." (*Travelers Indemnity Co.* v. *Gillespie* (1990) 50 Cal.3d 82, 100 [266 Cal.Rptr. 117, 785 P.2d 500]; *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) In doing so, we should seek to avoid absurd or anomalous results. (*People* v. *Gonzalez* (1990) 51 Cal.3d 1179, 1221 [275 Cal.Rptr. 729, 800 P.2d 1159].)

■ Most relevant to the issues before us, we must remember that the meaning of the words used in a statute "can only be determined with reference to the context in which the words are used; that is, with reference

to such [legislative] purpose as may be discerned from examining the entire enactment of which the words are part. . . . Thus, 'in analyzing the legislative usage of certain words, " 'the objective sought to be achieved by a statute as well as the evil to be prevented is of prime consideration. . . .' " [Citations.]' (*Blumenfeld* v. *San Francisco Bay Conservation etc. Com.* (1974) 43 Cal.App.3d 50, 55 . . . .) The courts resist blind obedience to the putative 'plain meaning' of a statutory phrase where literal interpretation would defeat the Legislature's central objective. [Citation.]" (*Leslie Salt Co.* v. *San Francisco Bay Conservation etc. Com.* (1984) 153 Cal.App.3d 605, 614 [200 Cal.Rptr. 575], fn. omitted.) To put it another way, the " 'language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' [Citation.]" (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898-899 [276 Cal.Rptr. 918, 802 P.2d 420]; accord, *Farnow* v. *Superior Court* (1990) 226 Cal.App.3d 481, 486 [276 Cal.Rptr. 275]; *Granberry* v. *Islay Investments* (1984) 161 Cal.App.3d 382. 388 [207 Cal.Rptr. 652].)

### 2. *Sections 36 and 425.13 Must Be Construed and Applied so as Not to Defeat the Fundamental Purpose of Either*

■ There can be little argument that section 36 was enacted for the purpose of assuring that an aged or terminally ill plaintiff would be able to participate in the trial of his or her case and be able to realize redress upon the claim asserted.[12] Such a preference is not only necessary to assure a party's peace of mind that he or she will live to see a particular dispute brought to resolution but it can also have substantive consequences. The party's presence and ability to testify in person and/or assist counsel may be critical to success. In addition, the nature of the ultimate recovery can be adversely affected by a plaintiff's death prior to judgment. (See, e.g., § 377.34.)

■ Beyond doubt, the legislative purpose behind section 425.13 was to shelter health care providers from the need to defend against punitive damage claims which have no substance.[13] Unfortunately, the legislative history of the statute contains no explanation for the time limitations which

---

[12]This is not only the obvious intent of the words used in the statute, it is borne out by the legislative history. The comment to the digest of the legislation relating to section 36 by the Assembly Committee on Judiciary states: "This Bill would provide an early trial date for persons who because of their advanced age or serious medical problems might die or become incapacitated before their cases come to trial."

[13]Section 425.13 was enacted in 1987 as a part of the Brown-Lockyer Civil Liability Reform Act. The legislative history reflects that the purpose of the statute was to provide "relief . . . from *unsubstantiated* claims of punitive damages in actions alleging professional negligence." (*Central Pathology Service Medical Clinic, Inc.* v. *Superior Court, supra,* 3 Cal.4th at p. 189, italics added.)

were adopted. However, from the language used in the statute, we can reasonably infer that the Legislature provided the nine months prior to trial limitation for at least two important reasons: (1) to provide a health care defendant with adequate notice of the claim and an ample period to conduct appropriate discovery and (2) to prevent the "last minute" insertion of a punitive damages claim into a case that has been prepared for trial without consideration of that issue. The adverse impact of such a tardy assertion on both trial preparation and settlement negotiations is obvious. Similarly, the outside limit of two years from the filing of the complaint also prevents the delayed assertion of a claim for punitive damages in a case where the issues and discovery requirements are likely to have become fixed. That such time period limitations might have unintended consequences or might not always achieve a fair result, does not deter us from our conclusion that these were the reasons for including them in the statute.[14]

While the purpose of these two statutes are both clear and salutary, the problem we have is how to reconcile and harmonize them when, as here, the terminally ill plaintiff establishes the right to an early trial date (i.e., within 120 days of the order granting the preference motion) but can only enjoy it by either convincing the court to disregard the purpose and mandate of section 425.13 or abandoning the punitive damage claim. Certainly, the Legislature could not have intended such a result.

Defendants argue that there is no need for conflict between these statutes. They contend that a plaintiff, who might be entitled to a trial preference, should simply defer seeking it until *after* the court has ruled upon a motion to amend under section 425.13. As no trial date would have yet been assigned, there would be no violation of the nine-month limitation; thereafter (even immediately thereafter), an early preferential trial date could be obtained without disturbing the validity of the order permitting the addition of a claim for punitive damages. Whatever the merits of that argument in the abstract, or its practical utility in some other case,[15] it is of no help to us here.

█ Petitioners did not seek a trial preference until *after* the trial court had ruled that they were not required to comply with section 425.13. It was

---

[14]That there was a particular sensitivity to the need for timely assertion of such claims against health care providers and an extended notice and discovery period, is suggested by the fact that when similar prepleading hurdles were imposed as to (1) punitive damage claims against religious corporations (§ 425.14), or (2) complaints against attorneys charged with engaging in a civil conspiracy with a client (Civ. Code, § 1714.10), no time limitations of any kind were imposed.

[15]We have some doubt as to the efficacy of such a resolution of the statutory conflict. It has the appearance of a tactical ruse which simply resolves the problem by ignoring and thus defeating the obvious purposes behind section 425.13 and takes no regard of the notice and discovery needs a health care defendant may have in a particular case. As our resolution of this case suggests, we believe that, pending legislative attention to this problem, the courts must attempt to harmonize the application of these statutes on a case by case basis.

then and only then that they sought an early trial date. In effect, they followed the very procedure that defendants here argue is proper. However, the trial court had no choice but to apply the rule announced in *Bommareddy* v. *Superior Court* and it properly denied defendants' motion to strike petitioners' punitive damage claims. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Thus, by virtue of a correct application of the then existing law, petitioners obtained the critical first assigned trial date prior to the time they ultimately were required to bring a section 425.13 motion. As that trial date was less than four months away, it became immediately impossible for them to satisfy the literal provisions of section 425.13. This was not a problem, of course, until July 31, 1992, when the Supreme Court overruled *Bommareddy.*

With less than two weeks until the first assigned trial date, the rules were changed and petitioners were required to demonstrate the existence of a substantially probable case for punitive damages or lose the right to proceed to trial on that issue. Defendants' essential response to petitioners' dilemma is that while the result is perhaps unfortunate, petitioners were nonetheless required to meet the nine-month limitation period; and since it was clearly impossible for them to do so, they lost their punitive damage claim.

In our view, such a result would be clearly unjust and unfair. It would totally undercut and make meaningless the statutory purpose behind section 36 without advancing or protecting any purpose of section 425.13. Petitioners were granted the right to an early trial on their entire claim; the enjoyment of their preferential trial rights should not be conditioned upon the loss of a substantial part of that claim. We are unpersuaded by defendants' contention that petitioners should have somehow anticipated the Supreme Court's decision in *Central Pathology* and deferred their motion for a trial preference until after they had complied with the requirements of section 425.13.[16]

The harsh and unjust result urged by defendants is not supported by the one case upon which they rely. In *Brown* v. *Superior Court* (1990) 224

[16]At the time petitioners filed their trial preference motion on May 8, 1992, they would have known that the Supreme Court had denied review in *Bommareddy* and had granted review in *Feister* v. *Superior Court* (Cal.App.) (on Feb. 13, 1992), a case which had disagreed with *Bommareddy.* How petitioners were supposed to divine from this information that the Supreme Court was likely to overrule *Bommareddy* rather than reaffirm it is beyond us. Even knowledge of a grant of review in the *Central Pathology* case, (an unpublished denial of a mandate petition), would not have provided useful information. In short, apart from rank speculation, the state of the law when petitioners acted was not in serious doubt. Moreover, defendants' arguments regarding the extent to which the law was "fixed" or "settled" go to the question of the retroactive application of *Central Pathology* (see *Newman* v. *Emerson Radio Corp., supra,* 48 Cal.3d at p. 986), an issue which we have already addressed in our order of September 24, 1992. It does not help us with the issues of justice and equity presented by the instant petition.

Cal.App.3d 989 [274 Cal.Rptr. 442], the court held that a plaintiff's section 425.13 motion was not timely where it was filed less than six months before the first assigned trial date. Plaintiff argued that the nine-month rule should not be applied to "fast track" cases[17] where trial dates are routinely assigned very quickly after a case is at issue. She claimed that the early assignment of a trial date had made it "impossible" for her to comply with the nine-month time limitation in section 425.13. The court rejected that argument and noted the general rule that it is assumed that the Legislature had in mind existing laws (including the Trial Court Delay Reduction Act) when it passed section 425.13 (*Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, 977, fn. 10 [140 Cal.Rptr. 669, 568 P.2d 394]) and had made no exception therefor. (*Brown* v. *Superior Court, supra,* 224 Cal.App.3d at p. 993.)

However, the *Brown* court did not really have before it a statutory conflict problem. The plaintiff had filed her complaint against the health care provider defendants on January 24, 1989. A trial setting conference on September 1, 1989 had set the trial for August 1, 1990, 11 months later. Thus, she clearly had more than nine months prior to trial in which to prepare and file her motion under section 425.13. Thus, the issue of "impossibility" did not actually exist. The court, however, did recognize that if such a situation arose the trial court should attempt to avoid an injustice. The court noted that "it may be possible to begin trial in less than nine months after filing of the complaint, arguably rendering compliance with section 425.13 impossible. However, the court has the flexibility at trial setting to accommodate a party in such a predicament." (*Brown* v. *Superior Court, supra,* 224 Cal.App.3d at p. 994, fn. omitted.)

Thus, the court in *Brown* did not address the problem presented here where, by virtue of the competing provisions of two statutes, we are faced with recognizing that rights granted under one can only be enjoyed at the expense of the loss or impairment of the benefits of the other. That conflict is particularly exacerbated in this case because petitioners, through no fault of their own, did not even have a real or fair opportunity to make their own choice as to which statutory path they preferred.

In order to avoid such an unfair and unjust result we hold that the nine-month time limit should not be applied in this case to bar the consideration and, if appropriate, the granting of petitioners' motion to amend their pleadings. To conclude otherwise would require an application of these two statutes in a manner which produces an absurd and clearly anomalous result. This we must avoid. (*People* v. *Gonzalez, supra,* 51 Cal.3d at p. 1221;

---

[17]Fast track cases are those handled in some expedited manner pursuant to the Trial Court Delay Reduction Act. (Gov. Code, § 68600 et seq.)

*Farnow* v. *Superior Court, supra,* 226 Cal.App.3d at p. 486.) We cannot blindly apply the "plain meaning" rule of statutory construction where the obvious consequence is to defeat the central objective of the legislation. (*People* v. *Pieters, supra,* 52 Cal.3d at pp. 898-899; *Leslie Salt Co.* v. *San Francisco Bay Conservation, etc., Com., supra,* 153 Cal.App.3d at p. 614.)

As we have noted, the underlying purpose of section 36 is to insure an opportunity for an early trial date for a terminally ill party while the objective of the time limitation in section 425.13 is to provide not only a reasonable period of notice as to a punitive damage claim, but also to avoid the consequent adverse impact on trial preparation and potential settlement negotiations of the tardy assertion of such a claim. The problem for us, in the context of the facts presented here, is to balance these competing goals in a way that gives recognition to both while achieving a just result. This cannot be accomplished if we, as defendants urge and as the trial court did, enforce the literal language of section 425.13. To do so will reach a result which is both absurd and unjust and clearly not intended by the Legislature. Harmonization with section 36 can only be accomplished by recognizing a rule which serves the legislative purposes of both statutes.

We therefore imply an exception to section 425.13 which permits the granting of a motion brought less than nine months prior to the first assigned trial date where it is *necessary* to protect a plaintiff's right to a preferential trial date *and* the defendant receives or has had a reasonable opportunity to conduct discovery regarding the punitive damage claim. In the peculiar circumstances of a case such as this one, we can accommodate the fundamental and salutary purposes of these two statutes in no other way.

The judicial recognition of an implied exception to an otherwise mandatory statute is not without precedent where, in a particular case, enforcement of the literal language would require performance of an impossible, impracticable or futile act. For example, prior to the codification of the principle set out in section 583.340, subdivision (c), the Supreme Court had recognized that same principle as an implied exception to the mandatory five-year dismissal provisions of former section 583, subdivision (b). Although that former statute expressly provided that the five-year deadline could be avoided *only* by the written stipulation of the parties, the Supreme Court "made an effort to 'set[] reality above artificiality' " in applying the former provisions. (*Moran* v. *Superior Court* (1983) 35 Cal.3d 229, 237 [197 Cal.Rptr. 546, 673 P.2d 216], quoting from *Christin* v. *Superior Court* (1937) 9 Cal.2d 526, 532 [71 P.2d 205, 112 A.L.R. 1153].) Thus, an exception to the otherwise hard and fast dismissal rule was implied where going to trial would be impossible, impracticable or futile. (*Moran, supra,* at pp. 237-238.)

The reasoning behind the exception was simple—since the purpose of the five-year rule was to prevent *avoidable* delay for too long a period, the exception insured that a plaintiff's case would not be arbitrarily cut off after five years. (*Ibid.*)

Here, it was clearly impossible for petitioners to comply with the time limitations of section 425.13. Thus, in order to receive the trial preference to which the trial court found them entitled, they are required to abandon a major part of their claim if we apply section 425.13 literally. This result could not be an intended consequence of section 36, and defeats its very purpose. On the other hand, defendants had substantial notice of the punitive damage claim and an ample opportunity to conduct discovery with respect to it. Indeed, they concede that they have not been surprised or prejudiced by the timing of petitioners' motion under section 425.13. Thus, the purpose behind section 425.13 has, in fact, been served. Therefore, it is appropriate in these circumstances for us to imply an exception to this otherwise mandatory statute.

The trial court should consider and rule upon the merits of petitioners' motion without regard to the nine-month limitation in section 425.13. That, however, brings us to the next issue which relates to the proper standard to be applied in evaluating petitioners' showing in support of the motion.

3. *In Ruling on a Motion Under Section 425.13 the Trial Court Must Apply the "Clear and Convincing" Standard*

Defendants argue that in order for petitioners to satisfy the substantial probability burden imposed by section 425.13, they must persuade the trial court that they can present at least a prima facie case. Since petitioners' ultimate burden at trial will be to satisfy the jury *by clear and convincing evidence* that defendants were guilty of malice, oppression or fraud (Civ. Code, § 3294, subd. (a)), then a determination of whether a prima facie case exists will have to be judged by that same standard. Petitioners respond with the claim that such a burden under section 425.13 would violate their constitutional right to a jury trial. (Cal. Const., art. I, § 16.) On this second dispute between the parties, we side with the defendants.

The requirement in section 425.13 that a "substantial probability" of success be established imposes only a burden to demonstrate the existence of a prima facie case. Such a construction of the statute is necessary in order to avoid the conclusion that it unconstitutionally invades the right to a jury

trial. In reaching this conclusion, we are persuaded by the reasoning of the court in *Hung* v. *Wang* (1992) 8 Cal.App.4th 908 [11 Cal.Rptr.2d 113].[18]

In *Hung*, the court construed a similar prepleading hurdle statute. Civil Code section 1714.10 requires that a plaintiff seeking to charge an attorney with conspiring with his or her client must demonstrate a "reasonable probability" of ultimate success before the claim can be pleaded. The *Hung* court held that this did not require a weighing of evidence by the trial judge, but only a determination as to whether sufficient evidence had been presented to demonstrate a prima facie case. Only in this way would the jury right not be violated.

We believe that the reasoning in *Hung* applies equally well to section 425.13, even though the language used is slightly different.[19] As with the statute in *Hung*, section 425.13 must be construed in a manner which is consistent with its constitutionality. (*Metromedia Inc.* v. *City of San Diego* (1982) 32 Cal.3d 180, 186 [185 Cal.Rptr. 260, 649 P.2d 902].) Petitioners, in effect, argue that section 425.13 is unconstitutional because the substantial probability of success standard which it imposes upon them requires the demonstration of a winning case. While that may be one reasonable construction of the statutory language, it is not the only one. Section 425.13 may also be reasonably construed to require only that a plaintiff demonstrate the existence of sufficient evidence to establish a prima facie case for punitive damages, having in mind the higher clear and convincing standard of proof. In discharge of our obligation to adopt that construction which is consistent

---

[18]Defendants also argue that the right to a jury trial is not even implicated by section 425.13, as there is no jury right with respect to a claim for punitive damages. We disagree. "Trial by jury is an inviolate right and shall be secured to all, . . ." (Cal. Const., art. I, § 16.) "In California, the constitutional right to jury trial in civil cases is coextensive with the right as it existed under the common law of England in 1850, when the California Constitution was adopted. [Citation.] ' "The right has always been regarded as sacred and has been jealously guarded by the courts. [Citation.]" ' [Citation.] It is the function of the jury to determine questions of fact. [Citations.]" (*Hung* v. *Wang*, *supra*, 8 Cal.App.4th at p. 927.)

The resolution by jury of punitive damage claims was firmly a part of the common law by the time of the adoption of the California Constitution. As. the United States Supreme Court recently put it, " 'It is a well-established principle of the common law, that in actions of trespass and all actions on the case for torts, a jury may inflict what are called exemplary, punitive, or vindictive damages upon a defendant, having in view the enormity of his offence rather than the measure of compensation to the plaintiff. . . . [¶] . . . This has been always left to the discretion of the jury, as the degree of punishment to be thus inflicted must depend on the peculiar circumstances of each case.' [Citation.]" (*Pacific Mutual Life Insurance Co.* v. *Haslip* (1991) 499 U.S. 1, 16 [113 L.Ed.2d 1, 18-19, 111 S.Ct. 1032, 1042], quoting from *Day* v. *Woodworth* (1852) 13 U.S. (13 How.) 363, 371 [14 L.Ed. 181, 185].)

[19]Indeed, we have recently applied that same reasoning to our analysis and construction of section 425.14 (which imposes a differently worded but similar prepleading hurdle on a plaintiff with a punitive damage claim against a religious organization). (See *Rowe* v. *Superior Court* (1993) 15 Cal.App.4th 1711 [19 Cal.Rptr.2d 625].)

rather than inconsistent with constitutionality, we believe the latter interpretation is the proper one.

We therefore conclude that, in the words of the *Hung* court, it is only necessary that plaintiff provide "a sufficient prima facie showing of facts to sustain a favorable decision if the evidence submitted by the [plaintiff] is credited." (*Hung* v. *Wang, supra,* 8 Cal.App.4th at p. 931.) The trial court is not required to make any factual determination or to become involved in any weighing process beyond that necessarily involved in deciding whether a prima facie case for punitive damages exists. Once the court concludes that such a case can be presented at trial it must permit the proposed amended pleading to be filed. If it concludes that no such case exists, then it properly rejects the proposed pleading amendment. In making this judgment, the trial court's consideration of the defendant's opposing affidavits does not permit a weighing of them against the plaintiff's supporting evidence, but only a determination that they do or do not, *as a matter of law,* defeat that evidence.

However, this conclusion does not resolve the question of the proper standard to be applied by the trial judge in making this determination. ■ In our view, this issue is substantially identical to the problem raised by a defendant's motion for summary judgment in a case where the plaintiff's ultimate burden of proof will be by "clear and convincing" evidence. In such a case, the evidence and all inferences which can reasonably be drawn therefrom must meet that higher standard. (*Anderson* v. *Liberty Lobby, Inc.* (1986) 477 U.S. 242, 254-255 [91 L.Ed.2d 202, 215-216, 106 S.Ct. 2505, 2513-2514]; *Reader's Digest Assn.* v. *Superior Court* (1984) 37 Cal.3d 244, 252 [208 Cal.Rptr. 137, 690 P.2d 610]; *Miller* v. *Nestande* (1987) 192 Cal.App.3d 191, 196 [237 Cal.Rptr. 359, 62 A.L.R.4th 301].) As the United States Supreme Court put it, ". . . in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden. . . . [¶] Our holding that the clear-and-convincing standard of proof should be taken into account in ruling on summary judgment motions does not denigrate the role of the jury. It by no means authorizes trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." (*Anderson* v. *Liberty Lobby, Inc., supra,* at pp. 254-255 [91 L.Ed.2d at p. 216].)

■ There is no reason for the result to be any different here. If petitioners are ever going to prevail on a punitive damage claim, they can only do so by establishing malice, oppression or fraud by clear and convincing evidence. Thus, any prima facie case must necessarily meet that standard. In

ruling on the motion to amend the pleadings the trial court will have to be satisfied that petitioners' evidentiary showing rises to that level. Rephrasing the above quoted words of the United States Supreme Court in *Anderson*, the judge must view petitioners' evidence through the prism of the "clear and convincing" evidentiary burden which they must, in any event, ultimately sustain. Unless persuaded that such burden has been met, the court could hardly conclude that a substantial probability of ultimate success exists. We therefore hold that when the trial court considers the petitioners' motion on its merits, it must evaluate the evidence presented with that substantive evidentiary burden in mind.

## DISPOSITION

The alternative writ is discharged. A peremptory writ shall issue directing the trial court to vacate its order of January 14, 1993, denying petitioners' motion under section 425.13 on the ground of untimeliness and to conduct further proceedings consistent with the views expressed herein.

Klein, P. J., and Kitching, J., concurred.

A petition for a rehearing was denied July 8, 1993, and the petition of real parties in interest for review by the Supreme Court was denied September 2, 1993.