[No. G021750. Fourth Dist., Div. Three. Mar. 31, 1999.]

MICKEY CONROY et al., Plaintiffs and Appellants, v.
TODD SPITZER, Defendant and Respondent.

COUNSEL

Knypstra & Associates and Bradley P. Knypstra for Plaintiffs and Appellants.

Ufkes & Bright and Jamie Morris Spitzer for Defendant and Respondent.

**OPINION**

**SILLS, P. J.**—Code of Civil Procedure section 425.16 was enacted to discourage the filing of SLAPP suits—otherwise known as strategic lawsuits against public participation. SLAPP suits are, by definition, aimed at chilling the valid exercise of political rights, particularly the right of freedom of speech and the right to petition the government for the redress of grievances.

The present case involves what the trial court characterized as a SLAPP suit, and after reviewing the entire record we agree. Mickey Conroy filed a defamation suit against Todd Spitzer, his political rival in the 1996 elections for the Orange County Board of Supervisors. At that time Conroy was a California State Assemblyman whose former assistant had filed sexual harassment charges against him. Conroy was investigated by the Assembly and reprimanded for violating the Assembly's sexual harassment policy. Various newspapers reported on the sexual harassment suit, Conroy's reprimand and the cost of Conroy's defense. During his campaign, Spitzer made numerous comments about the sexual harassment suit, which became the basis for Conroy's defamation suit.

The trial court granted Spitzer's motion to strike the complaint as a SLAPP suit, noting that Spitzer's campaign statements were either true or

based on reliable evidence. Conroy was ordered to pay $3,421 in attorney fees and costs. We affirm because, as explained below, Conroy failed to show a probability of prevailing on his defamation claim.

## FACTS

In 1996, Conroy and Spitzer were candidates for a seat on the Orange County Board of Supervisors. At that time, Conroy, a member of the California State Assembly, was facing a sexual harassment suit filed by a former assistant. The Assembly investigated the allegations and reprimanded Conroy "for engaging in conduct . . . that constituted violations of the [Assembly's] Sexual Harassment Policy . . . ." Various newspapers—including the San Francisco Examiner, the Sacramento Bee, the Orange County Register, and the Los Angeles Times—printed reports of the sexual harassment suit, Conroy's reprimand and the cost of Conroy's defense.[1]

Spitzer used this information in his campaign against Conroy. In a letter to absentee voters, Spitzer stated that Conroy "is also spending $583,000 of taxpayer money to fight sexual harassment charges, for which he has already been found guilty in the Assembly Rules Committee." Spitzer's campaign mailers contained the following statements: "Fact: The bi-partisan Assembly Rules Committee conducted a thorough investigation and found that Mickey Conroy was guilty of sexual harassment of one of his employees . . . . [¶] Fact: Conroy has done everything he can to delay the lawsuit until after the November 5th election. [¶] Fact: Taxpayers have already spent more than $583,000 in legal fees, including helping Conroy delay the trial, despite the Legislature's findings. [¶] Fact: Taxpayers will spend at least another $250,000 in legal fees helping Conroy defend himself against charges that have already been proven. [¶] Fact: Conroy stated on KOCE-TV that he will 'probably settle' the case after the election." Spitzer spoke about Conroy on local television and radio programs, stating that "the state legislative committee which investigated him has already found him guilty"; "he's already been found guilty of sexual harassment"; and "he has used every trick in the book to postpone his trial until after election."

Conroy filed suit against Spitzer, claiming libel, slander per se, intentional infliction of emotional distress and negligent infliction of emotional distress. Spitzer filed a special motion to strike Conroy's complaint pursuant to

---

[1]The San Francisco Examiner reported that "[t]he state has already paid $291,000 to outside lawyers: $226,000 to [a] Sacramento employment law firm . . . and $66,000, to [a] legal and lobbying firm . . . which conducted the original probe."

section 425.16 of the Code of Civil Procedure. The trial court granted Spitzer's motion to dismiss the entire action with prejudice and ordered Conroy to pay $3,421 in attorney fees and costs. The court found that: "Plaintiffs have failed to carry their burden of demonstrating a probability that they will prevail on their claims pursuant to *Code of Civil Procedure* section 425.16(b). Plaintiffs have not demonstrated by clear and convincing evidence that defendant possessed the requisite actual malice required under *New York Times* v. *Sullivan* . . . [and] *Robertson* v. *Rodriguez* . . . ." From the judgment of dismissal Conroy now appeals.

## DISCUSSION

### *Background of Code of Civil Procedure Section 425.16*

■ Strategic lawsuits against public participation or SLAPP suits (as they are more commonly known) have "been described as '. . . meritless suit[s] filed primarily to chill [a] defendant's exercise of First Amendment rights.'" (*Macias* v. *Hartwell* (1997) 55 Cal.App.4th 669, 672 [64 Cal.Rptr.2d 222], quoting *Wilcox* v. *Superior Court* (1994) 27 Cal.App.4th 809, 815, fn. 2 [33 Cal.Rptr.2d 446].) Finding a "disturbing increase" in such lawsuits, the Legislature enacted Code of Civil Procedure section 425.16. This anti-SLAPP statute provides that a cause of action arising from a person's exercise of the constitutional rights of petition or free speech in connection with a public issue is "subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1).) The purpose of section 425.16[2] is to "encourage continued participation in matters of public significance" by "eliminat[ing] meritless litigation at an early stage in the proceedings. . . ." (*Macias* v. *Hartwell, supra*, 55 Cal.App.4th at p. 672, citation omitted.)

■ Under the anti-SLAPP statute, once Spitzer showed that his statements were acts in furtherance of his right of free speech and made in connection with a public issue, then, in order to defeat Spitzer's motion to strike, Conroy had the burden of showing a probability of prevailing on his defamation claim.

---

[2]All statutory references are to the Code of Civil Procedure.

*Spitzer's Statements Involved His Right of Free Speech in*
*Connection With a Public Issue*

█ Section 425.16 applies to suits involving statements made during political campaigns. (See *Beilenson* v. *Superior Court* (1996) 44 Cal.App.4th 944, 950 [52 Cal.Rptr.2d 357] [applying § 425.16 to a libel action by a losing political candidate against the winner for statements made in campaign mailers]; *Matson* v. *Dvorak* (1995) 40 Cal.App.4th 539, 542 [46 Cal.Rptr.2d 880] [applying § 425.16 to statements made in a campaign flyer concerning a candidate]; *Robertson* v. *Rodriguez* (1995) 36 Cal.App.4th 347 [42 Cal.Rptr.2d 464] [applying § 425.16 to statements made in a mailer in connection with a recall election].) "The right to speak on political matters is the quintessential subject of our constitutional protections of the right of free speech. 'Public discussion about the qualifications of those who hold or who wish to hold positions of public trust presents the strongest possible case for applications of the safeguards afforded by the First Amendment.' " (*Matson* v. *Dvorak, supra,* 40 Cal.App.4th at p. 548, quoting *Aisenson* v. *American Broadcasting Co.* (1990) 220 Cal.App.3d 146, 154 [269 Cal.Rptr. 379].)

█ Here, Spitzer's statements obviously fell within the purview of section 425.16 because they addressed a matter of public concern—a candidate's qualifications and conduct in office. Therefore, the only issue is whether Conroy established a probability of prevailing on his defamation claim.

*Conroy Failed to Show a Probability of Prevailing on*
*His Defamation Claim*

█ In order to establish a "probability" of prevailing on his defamation claim against Spitzer, Conroy had to make a prima facie showing of facts which would, if credited, support a judgment in his favor. (*Wilcox* v. *Superior Court, supra,* 27 Cal.App.4th at pp. 823-824.) As a public official, Conroy could not recover damages for Spitzer's statements about his fitness for office unless he proved by clear and convincing evidence that the "statement[s] [were] made with 'actual malice'—that is, with knowledge that [they were] false or with reckless disregard of whether [they were] false or not." (*New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254, 279-280 [84 S.Ct. 710, 726, 11 L.Ed.2d 686, 95 A.L.R.2d 1412].) Therefore, in addressing the issue of whether Conroy demonstrated the existence of a prima facie case for defamation, we "bear in mind the higher clear and convincing standard of proof." (*Robertson* v. *Rodriguez, supra,* 36 Cal.App.4th at p. 358;

cf. *Looney* v. *Superior Court* (1993) 16 Cal.App.4th 521, 538 [20 Cal.Rptr.2d 182] ["Section 425.13 . . . require[s] only that a plaintiff demonstrate the existence of sufficient evidence to establish a prima facie case for punitive damages, having in mind the higher clear and convincing standard of proof."].)

 Here, the trial court found that the factual statements Spitzer made during the campaign were either true, i.e., Conroy was indeed reprimanded by the Assembly for sexual harassment, or based on reliable evidence, i.e., the Assembly investigation report and reprimand letter, newspaper articles, and Conroy's own statements. A complete review of the record shows no reason to doubt the trial court's determination.

First, Conroy was sent a formal letter of reprimand from then Speaker of the Assembly, Willie Brown, on March 8, 1994, after an investigation by the Assembly Rules Committee revealed that Conroy's "conduct was inappropriate and violative of the Assembly policy."[3] The committee recommended peer review and additional sexual harassment and sensitivity training for Conroy and his staff because "the general conduct in the office was inappropriate." The reprimand letter informed Conroy that the investigation clearly established he had participated in acts in violation of the Assembly's sexual harassment policy and that his conduct "failed to meet the standard expected by this House of each of its Members." It then went on to declare: "I hereby reprimand you, Assembly Member Mickey Conroy, for engaging in conduct described in the above-referenced Findings that constituted violations of the Sexual Harassment Policy duly adopted by this House."

Spitzer mentioned this letter in one of his mailers, stating that "[t]he bi-partisan Assembly Rules Committee conducted a thorough investigation and found that Mickey Conroy was guilty of sexual harassment of one of his employees . . . ." Spitzer also spoke about Conroy's reprimand on local radio programs, stating that "the state legislative committee which investigated him has already found him guilty" and "he's already been found guilty of sexual harassment." Here, Spitzer simply reported the findings and conclusions of the committee; he made no false statements regarding the sexual harassment allegations against Conroy. As the trial court explained,

---

[3]Findings by the Assembly Rules Committee concluded that between March and May of 1993, Conroy subjected his then staff assistant, Robyn Boyd, to unwelcome and unsolicited physical contact. Conroy kissed Ms. Boyd in his car, once greeted her with a kiss in front of a peer, and put his arm around her on several occasions. Ms. Boyd did not initiate this contact, nor did she expressly consent to it.

---

"Conroy was reprimanded for sexual harassment and thus found guilty by the Assembly . . . ."

Conroy argues that Spitzer's use of the term "guilty" denotes that he was found guilty of a crime. This argument fails because Conroy's definition of "guilty" is overly narrow. (See *Robertson* v. *Rodriguez, supra*, 36 Cal.App.4th at pp. 359-360 [city council member who filed a SLAPP suit failed to make an adequate prima facie showing of actual malice because his "definition of a 'fine' [was] overly narrow in that fines are not limited to criminal cases"].) Even by the late 20th century not everyone has attended law school—yet—and thus the ordinary person still does not equate the colloquial use of "guilty" with *criminal* guilt. We agree with the trial court that "there is no merit to the argument that the term 'guilty' would connote, in the minds of an average reader, a finding of guilt by a court of law." Webster's dictionary recognizes this distinction and defines guilty, inter alia, as "justly chargeable with or responsible for a usu[ally] grave breach of conduct *or* a crime." (Webster's Collegiate Dict. (10th ed. 1996) p. 517, italics added.)

Second, numerous newspapers—including the Los Angeles Times, the Orange County Register, and the Sacramento Bee—reported that the Assembly Rules Committee reprimanded Conroy for violating the Assembly's Sexual Harassment Policy. In discussing the sexual harassment suit against Conroy, the San Francisco Examiner reported that "[t]he state has already paid $291,000 to outside lawyers: $226,000 to [a] Sacramento employment law firm . . . and $66,000, to [a] legal and lobbying firm . . . which conducted the original probe." As the trial court noted, newspapers are generally thought to be reliable sources of information. Spitzer's statements about the costs of Conroy's defense and his sexual harassment reprimand are virtually the same as those reported in the newspaper articles.[4] Therefore, as Spitzer's statements are based on reliable evidence, he did not make them with actual malice.

---

[4] In support of his special motion to strike Conroy's complaint, Spitzer stated in his declaration that the San Francisco Examiner documented Conroy's legal fees as of September, 1996, to be $583,000—$291,000 to outside lawyers, $226,000 to an employment law firm defending Conroy, and $66,000 to the firm which conducted the original investigation. It appears as though Spitzer made a miscalculation by not reading the punctuation in the article carefully. Rather than stating that Conroy's legal fees included $291,000 + $226,000 + $66,000, as Spitzer read it, the newspaper actually stated that Conroy's legal fees were $291,000, which consisted of $226,000 to an employment law firm and $66,000 to a legal and lobbying firm. Spitzer's mistake is understandable in light of the fact that $226,000 + $66,000 equals $292,000, and not the $291,000 reported by the newspaper.

And finally, Spitzer's expressions of personal opinion about Conroy's fitness for office are not actionable.[5] An individual who seeks public office invites public criticism of his fitness and qualifications and, in so far as the statements might imply that, in the defendant's *opinion*, the plaintiff was unfit for the office he was seeking, no complaint can be made because the defendant has the right to express his opinion. (*Aisenson* v. *American Broadcasting Co., supra,* 220 Cal.App.3d at p. 155.)

Section 425.16 required Conroy to·demonstrate he would "probably" prevail on his claims. Under *New York Times* and its progeny, Conroy was required to "show a likelihood that he could produce clear and convincing evidence" that Spitzer's statements were made with actual malice. (*Beilenson* v. *Superior Court, supra,* 44 Cal.App.4th at p. 953.) However, as Spitzer's statements were either true or based on reliable evidence, Conroy failed to make a prima facie showing of facts to sustain a favorable judgment. Because Conroy failed to establish a probability of prevailing on his defamation claim, the trial court properly granted Spitzer's motion to strike.

Conroy argues that the trial court erred in its application of the clear and convincing standard, citing the trial court's ruling that "[p]laintiffs have not demonstrated by clear and convincing evidence that defendant possessed the requisite actual malice required under *New York Times* . . . ." The court's statement, however, must be taken in context. In granting Spitzer's motion to strike, the trial court also stated that "[p]laintiffs have failed to carry their burden of demonstrating a probability that they will prevail on their claims pursuant to *Code of Civil Procedure* section 425.16(b)." Even if the trial court did apply a clear and convincing standard rather than the appropriate standard of showing a probability of producing clear and convincing evidence of actual malice at trial, this is a distinction without a difference. While it is doubtful, in light of the findings of the Assembly Rules Committee, that Conroy could show even the *falsity* of Spitzer's statements, it is clear that Conroy failed to produce any evidence of actual malice. Therefore he could not prevail on his defamation claim regardless of which standard the trial court applied.

*Attorney Fees*

Section 425.16, subdivision (c) authorizes an award of attorney fees and costs to the prevailing party. Further, the right of a prevailing defendant

---

[5]Spitzer's statements include: "Conroy has done everything he can to delay the lawsuit until after the November 5th election"; "He has used every trick in the book to postpone his trial until after election"; "Conroy stated on KOCE-TV that he will 'probably settle' the case after the election"; and "Taxpayers will spend at least another $250,000 in legal fees helping Conroy defend himself against charges that have already been proven."

to recover attorney fees and costs adequately compensates him for "the expense of responding to a baseless lawsuit." (*Robertson* v. *Rodriguez*, *supra*, 36 Cal.App.4th at p. 362.) Therefore, as Spitzer is the prevailing party, the trial court's order for Conroy to pay $3,421 in attorney fees and costs was correct.

CONCLUSION

The judgment and order to pay attorney fees and costs are affirmed. Spitzer is to recover his attorney fees and costs on appeal.

Sonenshine, J., and Rylaarsdam, J., concurred.