[No. E031041. Fourth Dist., Div. Two. Mar. 17, 2003.]

PUBLIC DEFENDERS' ORGANIZATION et al., Plaintiffs and Respondents, v.
COUNTY OF RIVERSIDE et al., Defendants and Appellants.

## COUNSEL

William C. Katzenstein, County Counsel, Robert M. Pepper, Principal Deputy County Counsel; Greines, Martin, Stein & Richland and Timothy T. Coates for Defendants and Appellants.

Olins, Foerster & Hayes, Dennis J. Hayes and Elizabeth M. Branch for Plaintiffs and Respondents.

## OPINION

**McKINSTER, Acting, P. J.**—An organization of public employees succeeded in obtaining a writ of mandate directing the public employer to recognize the organization as the majority representative of certain employees and to conduct an election to determine whether those employees wished to designate the organization as their exclusive representative. The employer appeals. We reverse.

### LEGAL, FACTUAL AND PROCEDURAL BACKGROUND

#### A. *The Meyers-Milias-Brown Act and the County's Employee Relations Resolution*

The Meyers-Milias-Brown Act (Gov. Code, §§ 3500-3511; hereinafter, the Act) regulates the negotiation of memoranda of understanding between local governmental agencies and their employees concerning terms and conditions of employment. The Act authorizes each public agency to adopt reasonable rules governing the administration of the Act within that agency. (Gov. Code, § 3507.) Pursuant to that authority, Riverside County (County) has adopted an employee relations resolution. (Resolution No. 99-379; hereinafter, ERR.)

Normally, the negotiation is conducted through employee organizations rather than with the employees individually. (See Gov. Code, § 3502; ERR, § 5.) " 'Employee organization' means any organization which includes employees of a public agency and which has as one of its primary purposes representing those employees in their relations with that public agency." (Gov. Code, § 3501, subd. (a); accord, ERR, § 3, subd. h.) The ERR distinguishes between three categories of employee organizations.

"Registered employee organization means an employee organization which has been acknowledged by the County as an employee organization that represents employees of the County." (ERR, § 3, subd. q; accord, Gov. Code, § 3501, subd. (b) ["recognized employee organization"].)

A "majority employee organization," to which the ERR also refers as a "majority representative" (see, e.g., ERR, § 9, subd. b ), is "a registered employee organization whose represented members comprise a majority of the employees in a [representation] unit and which has been certified within the unit as the only organization to represent the employees of that unit in meeting and conferring" (id., § 3, subd. l), i.e., in negotiating memoranda of understanding concerning "wages, hours and other terms and conditions of employment" (id., § 3, subd. o).

An "exclusive employee organization," to which the ERR also refers as an "exclusive representative" (see, e.g., ERR, § 9, subd. c), is "a registered employee organization which has the exclusive right to represent the employees in a representation unit pursuant to a vote of the employees in that Unit" (ERR, § 3, subd. i).

Professional employees, such as attorneys, physicians, and engineers, have the right to representation separate from nonprofessional employees. (Gov. Code, § 3507.3.) Accordingly, among the bargaining or "representation" units established in the ERR is the professional unit, which is comprised of professional employees in a variety of County departments. (ERR, § 8, subd. a.2.)

B. *The Creation of the Deputy Public Defenders Representation Unit*

Prior to July of 2000, the nonmanagerial deputy public defenders (hereinafter, deputy public defenders) in the County were allocated to the professional unit. Until 1997, Public Employees of Riverside County was the registered employee organization representing the professional unit. Since 1997, the Service Employees International Union (SEIU) has been the

exclusive employee organization representing the employees of that unit. On behalf of the professional unit, the SEIU had negotiated a memorandum of understanding (MOU) for the period ending June 30, 2000 (1997-2000 MOU).

Unlike the County's deputy public defenders, its deputy district attorneys are allocated to the prosecution unit, which is composed exclusively of deputy district attorneys. (ERR, § 8, subd. a.7.) During the term of the 1997-2000 MOU, the SEIU sued the County to establish that deputy public defenders were entitled to parity with deputy district attorneys in compensation and benefits. In settlement of that suit, the County agreed to pay compensation to the deputy public defenders comparable to that paid to the deputy districts attorneys, but only for the term of the 1997-2000 MOU.

Apparently, as the expiration of the 1997-2000 MOU approached, the SEIU negotiated with County for a new MOU and reached a tentative agreement with the County. In doing so, however, the SEIU had not even attempted to maintain compensation parity with the prosecution unit, much less achieve parity regarding benefits or working conditions.

When the deputy public defenders discovered in July of 2000 that the proposed new MOU did not maintain parity, they formed the Public Defenders' Organization (PDO), an employee organization created for the purpose of representing the deputy public defenders in their employee relations with the County. On July 25, 2000, the PDO applied to the County to become a registered employee organization, asked that the deputy public defenders be removed from the professional unit and allocated to a new unit to be created for deputy public defenders, and stated that the majority of deputy public defenders wanted to be represented by the PDO. Supporting that application were declarations from 64 public defenders, stating that they were resigning from the SEIU. The stated purpose of the PDO's request that the deputy public defenders be placed into a separate unit was "so that they will not be bound by the terms and conditions of the pending tentative agreement regarding the existing [i.e., professional] unit."

In response, the County recognized the PDO as a registered employee organization but initially refused to create a new representation unit for them. However, after the PDO threatened to appeal that decision to the board of supervisors, the County's human resources director agreed on August 15, 2000, to create a new representation unit, the deputy public defender unit.

That decision, however, was not effective until September of 2000.[1] Moreover, the County stated that the SEIU would be the employee organization representing the new unit.

On August 21, 2000, the PDO asked the County either to recognize it as a majority employee organization on the basis of the declarations previously submitted or to conduct an election among the members of the new unit to select a representative. On August 24, it reiterated that request, and also asked that it be recognized as an exclusive employee organization and that the County postpone any final action by the board of supervisors on the tentative MOU negotiated by the SEIU.

The MOU between the County and the SEIU for 2000 to 2003 (2000-2003 MOU) was signed that same day, August 24, 2000, and approved by the board of supervisors on August 29, 2000. The County never recognized the PDO as either a majority or exclusive employee organization and never called for an election in the deputy public defender unit. Instead, the County maintained that the SEIU was the exclusive employee organization for that unit.

## C. *The Petition for Writ of Mandate*

On August 25, 2000, the PDO and several of its members and officers petitioned the trial court for a writ of mandate, directing the County, its board of supervisors, and Ronald Komers, its employee relations director (collectively the County), to recognize the PDO as the majority representative for the deputy public defender unit and to hold an election in that unit to determine whether it would be the unit's exclusive representative. The County opposed the petition.

Finding that the County had violated the terms of section 9 of the ERR by refusing to recognize the PDO as a majority employee organization and by failing to call an election to determine whether the PDO would be the exclusive employee organization for the new unit, the trial court granted the petition. The County appealed.

---

[1] The ERR provides that, when a request is received to modify an established representation unit, the County must give notice of that request to other employee organizations with members in that unit and to the employees of that unit. (ERR, § 10, subd. 3.) It also provides a mechanism for any objections or counterproposals for modification to be heard and resolved. (*Id.*, subds. 5-7.) In this instance, the SEIU objected to the modification on August 29, 2000, and the County rejected that objection on September 6, 2000. The record does not explain the County's assertion that its agreement to create a deputy public defender unit was not effective until September 11, 2000, rather than September 6, 2000. But either date was after the new MOU had gone into effect on August 29, 2000.

### D. *The Order for Attorney's Fees*

After the judgment was entered, the PDO moved for an award of attorney's fees on the "private Attorney General" statute, Code of Civil Procedure section 1021.5. The trial court granted the motion and awarded a total of $4,951.81 in fees and costs. The County appealed from the postjudgment order as well. We have treated the two notices of appeal as constituting a single appeal.

### CONTENTIONS

The County contends that the trial court erred by ordering the County to recognize the PDO as a majority employee organization under section 9 of the ERR because the SEIU, the prior exclusive employee organization for the unit, had not been decertified pursuant to section 11 of the ERR. It also contends that the order awarding attorney's fees must be reversed because the PDO did not meet the statutory criteria for such an award. The PDO disputes those contentions and argues that the judgment is not appealable.

### ANALYSIS

### A. *The Judgment Is Final and Appealable.*

■ Generally, only judgments may be appealed. (Code Civ. Proc., § 904.1, subd. (a)(1).) "A judgment is the final determination of the rights of the parties in an action or proceeding." (*Id.*, § 577.) Petitions for extraordinary writs, such as petitions for writs of mandate, are special proceedings. (*Id.*, § 1067 et seq.) Accordingly, an order granting or denying a petition for an extraordinary writ constitutes a final judgment for purposes of an appeal, even if the order is not accompanied by a separate formal judgment. (*Townsel v. San Diego Metropolitan Transit Development Bd.* (1998) 65 Cal.App.4th 940, 944, fn. 1 [77 Cal.Rptr.2d 231]; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2002) ¶ 2:111, p. 2-54.1.)

■ The PDO argues that the order granting the petition for writ of mandate is not final, and thus not appealable, because it does not finally determine the rights of the parties. Contending that the County is not treating the PDO as a majority employee organization, and noting that it recently filed a motion in the trial court seeking an order compelling the County to comply with the substance of the judgment by negotiating with the PDO, the PDO concludes that the judgment is not final because further judicial action is necessary to achieve the purpose of the litigation. The PDO is mistaken.

" '[W]here no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final, but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory.' " (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 698 [107 Cal.Rptr.2d 149, 23 P.3d 43], quoting from *Lyon v. Goss* (1942) 19 Cal.2d 659, 670 [123 P.2d 11].)

The PDO's petition sought a writ of mandate ordering the County to recognize the PDO as the majority representative for the deputy public defender unit and to call for an election to determine the exclusive representative for that unit. The judgment granted the exact relief for which the PDO had prayed. Thus, the rights of the parties that had been put at issue by the pleadings have been adjudicated. Whether the County is complying with that judgment is not relevant to whether the judgment is final and appealable.

B. *The Trial Court Erred by Granting the Petition for Writ of Mandate.*

█ Two sections of the ERR are arguably relevant to the PDO's right to the relief granted to it by the trial court: sections 9 and 11. Section 9 of the ERR (section 9) specifies, inter alia, the procedures by which an employee organization may become a registered employee organization (*id.*, subd. a), by which a registered employee organization may become recognized as a majority representative (*id.*, subd. b), and by which registered employee organizations may compete in an election to become the exclusive representative of the unit (*id.*, subd. c). Section 11 of the ERR (section 11) prescribes the procedure by which an incumbent exclusive representative may be "decertified" as the representative of a particular unit.

The County contends that a registered employee organization may not be designated as a majority representative under subdivision b of section 9 and is not entitled to an exclusive-representative election under subdivision c of that section unless any incumbent exclusive representative is first decertified under section 11. Noting that the SEIU was the exclusive representative of the deputy public defender unit after it split from the professional unit and that the PDO never attempted to decertify the SEIU as the deputy public defender unit's exclusive representative in the manner and within the time limits specified in section 11, the County argues the trial court erred by ordering the County to recognize the PDO as the deputy public defender unit's majority representative and to conduct an election within the unit to determine whether the PDO should be the exclusive representative of the unit.

The PDO contends that section 11 does not apply because, as a newly created representation unit, the deputy public defender unit did not have an incumbent exclusive representative to decertify. Alternatively, the PDO argues that, if section 11 does apply to new units, it is an unreasonable rule that conflicts with the intent of the Act and is therefore unauthorized and unenforceable.

There is no doubt that the PDO did not comply with section 11. The documents filed by the PDO in July and August of 2000 do not ask for the decertification of the SEIU. Even if they were nevertheless construed to constitute a petition for decertification, they would not comply with section 11 in at least three respects. A decertification petition must be signed by "at least forty (40) percent of the employees in the established appropriate unit," stating that they "no longer desire to be represented by the incumbent Exclusive Employee Organization." (§ 11, subd. d.) The declarations signed by the deputy public defenders stated that they resigned from membership in the SEIU but did not say that they wished to change representation. More-over, the deputy public defender unit did not become an "established" unit until it came into existence in September of 2000. Because all the declara-tions were signed before that time, they were not signed by employees in that unit. Finally, decertification petitions may be filed only during a 30-day period of time from 180 days to 150 days prior to the expiration of the existing MOU. (§ 11.) In this case, that window of opportunity is January of 2003 for the 2000-2003 MOU. Obviously, a petition filed in July or August of 2000 would not fall within that narrow window. Similarly, even were we to deem the petition to have been filed when the deputy public defender unit came into being in September of 2000, the petition was untimely.

For all those reasons, *if* the PDO were required to comply with section 11 before being entitled to either recognition as a majority representative or an election as an exclusive representative, the trial court erred by ordering that relief. The question, therefore, is whether section 11 imposed that require-ment in this circumstance. Specifically, the legal issue is this: When an existing representation unit is modified by dividing it—i.e., by removing certain classes of employees who had been assigned to that unit and reas-signing them to a new representation unit created to serve only those employees—does the exclusive representative that had represented the com-bined unit prior to its division automatically represent the new units resulting from that division?

Surprisingly, the County's ERR does not expressly answer that question. Although section 10 of the ERR prescribes the procedure for modifying a

unit, it is absolutely silent on the effect of any modification on the representation of that unit. In particular, it does not say what happens when, as in this case, an existing unit is split into two units. As we shall explain, however, the ERR should be interpreted to mean that the representative of the parent unit continues to represent the two products of that division.

A change in the composition of a unit does not necessarily imply a change in representation of that unit. One can easily imagine circumstances under which a group of employees or their representative organization might want to combine, divide, or otherwise modify bargaining units without changing the identity of the representative of those units. Thus, maintaining the same representative for the products of the division of the original unit is not inconsistent with the desire to divide that unit. Although the deputy public defenders wanted to implement both kinds of changes in this instance, our construction of the resolution must be consistent for all types of modifications, not simply ones in which the petitioning parties have an additional goal beyond division of the unit.

Unless specified otherwise by the ERR, the division of one unit into two effects only those changes necessary to accomplish that division. Because the continuation of the same representation is not contrary to or necessarily implied by the division, a division does not effect a change of representation.

The PDO argues that the deputy public defender unit is not a successor to the professional unit, but is instead an entirely new unit. We are not persuaded. This is not a situation in which employees who had never been represented before are being organized into a representation unit for the first time. The deputy public defender unit consists solely of employees who had been part of the professional unit and who had been represented by the exclusive representative of that unit. Under that circumstance, the two products of the division succeed to the former, combined unit, and the representative of the former unit continues to represent those two products.

That conclusion may not be obvious when, as in the present case, the two products of the division are of greatly different size and the smaller product is assigned a new name. But what if the deputy public defenders had comprised 49 percent of the professional unit, and the products had been denominated professional unit A and professional unit B following the division? Or if the former unit had been split into three products, each of approximately equal size? Any assertion that one of those is the "old" unit and retains the former representative while the remainder are "new" units without any incumbent representative would be arbitrary rather than reasoned and semantic rather than substantive. A construction of the ERR that

retains the preexisting representation for all products of the division avoids those artificial distinctions and promotes certainty.

The PDO also argues that this construction is unreasonable because, when coupled with the three-year length of the 2000-2003 MOU and the differing limitations on when unit-modification petitions and representative-decertification petitions may be filed, it means that a unit like the deputy public defender unit, the creation of which was sought in order to facilitate a change in representation, would have to wait for at least four months and sometimes for as long as two and a half years from the time the unit was created until a registered employee representative representing the employees of that unit would have the opportunity to decertify the existing representative. That delay, it contends, would be contrary to the intent of the Act, which is to protect the right of employees to be represented by unions of their own choosing. (Gov. Code, § 3502; *International Brotherhood of Electrical Workers v. City of Gridley* (1983) 34 Cal.3d 191, 202, fn. 12 [193 Cal.Rptr. 518, 666 P.2d 960]; *Service Employees Internat. Union v. Superior Court* (2001) 89 Cal.App.4th 1390, 1395 [108 Cal.Rptr.2d 505].)

Again, we are not persuaded. Any unit whose representative signs an MOU will be bound by the agreement for the balance of its term. (*San Bernardino Public Employees Assn. v. City of Fontana* (1998) 67 Cal.App.4th 1215, 1220 [79 Cal.Rptr.2d 634].) Thus, if a unit is divided after the effective date of an MOU to facilitate a change in representation, the products of that division will nevertheless be subject to the terms of an agreement negotiated by the disliked representative. In this case, the 2000-2003 MOU does not expire until June of 2003, nearly three years after the deputy public defender unit was created. If the members of that unit are bound by that agreement for nearly three years, it is not unreasonable that the unit will continue to be represented by the existing exclusive representative for most of that same period of time.

Nor is the time period excessive in the abstract. The regulations issued by the public employment relations board do not even permit a petition to divide a representation unit to be filed with it until 120 to 90 days before the expiration of the MOU, unless the MOU has been in effect for three years or more. (Cal. Code Regs., tit. 8, §§ 61400, subd. (b), 61420, subd. (b)(1), 61010.) The time period here is below that three-year threshold.

We conclude that the SEIU continued to represent the deputy public defender unit after it was split off from the professional unit. Accordingly, the SEIU must be decertified under section 11 before the PDO may be

recognized as a majority representative under section 9, subdivision b, or elected as a new exclusive representative under section 9, subdivision c. By issuing a writ of mandate that orders the County to recognize the PDO as a majority representative and to conduct an exclusive-representative election prior to the decertification of the SEIU, the trial court erred.

C. *The Postjudgment Attorney's Fee Order Must Also Be Reversed.*

We need not consider the County's contention that the attorney's fee order is not authorized by Code of Civil Procedure section 1021.5. Because we reverse the judgment granting the petition for writ of mandate, the postjudgment order that depends upon it must also be reversed.

### DISPOSITION

The judgment and the postjudgment order are reversed. The appellants shall recover their costs on appeal.

Ward, J., and Gaut, J., concurred.