Filed 5/19/20; Modified and Certified for Pub. 6/17/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BILL SANDLIN,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>MOLLY McLAUGHLIN et al.,<br><br>    Defendant and Respondent;<br><br>FRANK MCGILL et al.,<br><br>    Real Parties in Interest and Appellants. | G057264<br>(Consol. w/ G057420)<br><br>(Super. Ct. No. 30-2018-01014624)<br><br>O P I N I O N |

Appeal from orders of the Superior Court of Orange County, James Brandlin, Judge. (Retired judge of the L.A. Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 21 of the Cal. Const.) Reversed and remanded.

Kenneth D. Agran and Lawrence A. Agran for Real Parties in Interest and Appellants.

Mark S. Rosen for Plaintiff and Respondent.

\* \* \*

Petitioner Bill Sandlin filed a petition for writ of mandate challenging the candidate statements submitted by Real Parties in Interest Ed Pope, Jaci Woods, and Frank McGill (Real Parties) in their candidacy for positions on the Irvine City Council. Petitioner alleged Real Parties' candidate statements would mislead voters about the current city council's actions and the facts concerning a failed referendum to relocate the site of a planned state veterans cemetery. Real Parties opposed the petition and filed a special motion to strike under the anti-SLAPP statute (Code Civ. Proc., § 425.16[1]).

While Real Parties' anti-SLAPP motion was pending, the trial court denied the writ petition in its entirety, finding Petitioner's challenge to Pope's candidate statement was untimely, and finding he failed to establish Woods's or McGill's candidate statements were false, misleading, or otherwise barred by the Elections Code. The court then denied Real Parties' anti-SLAPP motion as moot, and further found it was barred by the public interest litigation exemption to the anti-SLAPP statute (§ 425.17, subd. (b)). Real Parties filed a motion for attorney fees under the private attorney general statute (§ 1021.5). The court denied this motion as well. Real Parties appeal the trial court's denial of their anti-SLAPP motion and its denial of their section 1021.5 fees motion.

After reviewing their anti-SLAPP motion de novo, we conclude the motion was not moot, the public interest litigation exemption is inapplicable, and the motion should have been granted. On remand, Real Parties should recover reasonable attorney fees incurred in bringing the anti-SLAPP motion (§ 425.16, subd. (c)(1)).

As for Real Parties' fees motion under section 1021.5, we conclude the trial court erred in finding Real Parties' successful defense against the petition did not result in the "enforcement of an important right affecting the public interest" or confer "a significant benefit" on Irvine voters. We therefore remand this matter for further consideration of the remaining elements of section 1021.5.

---

[1] All further statutory references are to this code unless otherwise noted.

2

I.

FACTS

A.     *Plans for the Southern California Veterans Cemetery*

In 2002, Orange County voted to create an urban regional park, now known as the Orange County Great Park, on the former El Toro Marine Corps Air Station. The City of Irvine annexed the property, which was estimated to be over 1,100 acres, for the creation of the Great Park.

The City later acquired an additional 130 acres (the ARDA site)[2] and offered that portion of the property to the State of California for the creation of a state veterans cemetery. In 2014, the Legislature unanimously adopted a bill designating the ARDA site as the future location of the Southern California Veterans Cemetery. (See Assem. Bill No. 1453.)

Three years later, the Irvine City Council decided to explore a land swap that would involve rezoning the ARDA site for commercial and industrial purposes and relocating the planned veterans cemetery to a different location at the interchange of the 5 and 405 freeways. Irvine residents launched a referendum drive supporting the land swap, gathered over 19,000 signatures, and forced a referendum to relocate the cemetery onto the June 2018 ballot (Measure B).

The parties to this litigation disagreed on whether Measure B was a good idea, falling on opposite sides of the debate. Petitioner, a registered voter and resident of Irvine, was a prominent supporter of Measure B and a leader in the "Yes on B" campaign, while Real Parties opposed Measure B.

Real Party Pope chaired a grassroots campaign against the referendum, with significant participation from Real Parties Woods and McGill, among others. The goals of their "No on B" campaign were to prevent the commercial development of the

---

[2]     The disputed issue of whether the ARDA site is "*in,*" "*at,*" or "*alongside*" the Great Park is not before us, and therefore we need not address the issue.

3

ARDA site and have the veterans cemetery built there as originally planned. In anticipation of the June election, Pope authored the ballot argument and rebuttal argument against Measure B, in which he described the ARDA site as "construction ready" and "in the Great Park."

B.      *The Referendum Case*

Petitioner filed a petition for writ of mandate (the Referendum Case) against the Orange County Registrar of Voters and the Irvine City Clerk, challenging the proposed ballot arguments against Measure B as false and misleading. His petition identified Pope as one of several real parties in interest.

The trial court in the Referendum Case partially granted the petition and entered a judgment to that effect in April 2018. Among other findings, the court held the ballot arguments referring to the ARDA site as "construction ready" and "in the Great Park" were false and misleading.

C.      *Real Parties' Candidate Statements*

In the June 2018 election, nearly 46,000 Irvine voters weighed in on Measure B, and about 63 percent rejected the proposed land swap. The following month, a member of the Irvine City Council introduced a motion to direct city staff to begin the building process at the ARDA site. Irvine's mayor and two other councilmembers, however, supported a substitute motion to further study the ARDA site and other issues related to the cemetery.

Frustrated by the council majority's apparent unwillingness to move forward with construction of the cemetery at the ARDA site, Pope filed to run for mayor in the November 2018 election, and Woods and McGill filed to run for two open city council seats. All three candidates submitted brief statements for inclusion in the official voter pamphlet. (See Elec. Code, § 13307 [permitting candidate for nonpartisan city elective office to submit statement including her name, age, occupation, and brief description of her education and qualifications].)

4

Those candidate statements are the crux of the present action. Although they varied in some respects, each statement discussed the veterans cemetery, the voters' rejection of Measure B, and the city council's response. Each candidate statement also described the cemetery as being either "*in*" or "*at* the Great Park" and expressed plans to "*immediately*" begin construction if elected. (Italics added.)[3]

D.    *Procedural History*

In August 2018, Petitioner filed a second petition for writ of mandate against the Orange County Registrar of Voters and the Irvine City Clerk under Elections

---

[3]    Pope's candidate statement stated in relevant part: "*I will faithfully implement the June 5th voter mandate to immediately begin construction of the long-promised Veterans Cemetery at the Great Park.* [¶] I chaired the historic 'NO on B' referendum campaign, culminating June 5th in a 63 [percent], two-part voter mandate. *First*, we rejected the action to replace the planned Great Park Veterans Cemetery *with huge, traffic-generating development projects. And, second, we told the Mayor and Council to immediately begin construction of the Veterans Cemetery.* [¶] *The City Council has refused to begin building the Veterans Cemetery. That's wrong. As your Mayor, I will honor the will of the people.*" (Italics added.)

Woods's candidate statement similarly stated in relevant part: "*Measure B was a developer scheme to replace our long-planned Veterans Cemetery at the Great Park with massive development, bringing yet more traffic to Irvine streets.* [¶] Well, our grassroots 'No on B' campaign won, 63 [percent] to 37 [percent]! *The people of Irvine said 'No' to the development scheme and 'Yes' to the Veterans Cemetery at the Great Park.* [¶] This past July 10th, *the City Council – on a 3-to-2 vote – refused to implement the voters' mandate to start building the Veterans Cemetery. . . . My first vote as your City Councilmember will be to immediately begin construction of the Veterans Cemetery on the original Great Park site, approved by the State Legislature four years ago.*" (Italics added.)

McGill's candidate statement in turn stated in relevant part: "I am outraged *that after the voter's [sic] mandate to restore the Veteran's Cemetery to its original location in the Great Park and stop its replacement by massive development, the Mayor and two Councilmembers voted otherwise.* [¶] If I am elected to the City Council, I will vote to *immediately* begin construction of the Veteran's *Cemetery on the originally planned, approved, and financed site in the Great Park.* [¶] *The current Council majority is very much pro development with little regard for our quality of life and protecting the Irvine environment.* I will be strongly responsive to the citizens *rather than to big developers* and work to serve the needs of the entire community." (Italics added.)

Code section 13313, which authorizes a trial court to issue a "peremptory writ of mandate . . . upon clear and convincing proof that the [candidate statement] is false, misleading, or inconsistent with the requirements of this chapter."  He alleged the portions of Real Parties' candidate statements italicized in the above footnote are false, misleading, and inconsistent with the Elections Code, and sought the deletion of those italicized portions.

Petitioner based his writ petition in part on the April 2018 judgment in the Referendum Case, in which a different judge had found the ballot arguments against Measure B referring to the ARDA site as "construction ready" and "*in* the Great Park" were false and misleading.  According to Petitioner, Real Parties' candidate statements were likewise false and misleading because they incorrectly described the cemetery as being "*in* the Great Park" and expressed plans to "*immediately*" begin construction if elected.  His petition also attacked the candidate statements' descriptions of the referendum and the city council's conduct as false and misleading, and further alleged the candidate statements improperly referenced other candidates in violation of Elections Code section 13308, which provides candidate statements "shall not in any way make reference to other candidates for that office or to another candidate's qualifications, character, or activities."

Real Parties filed an anti-SLAPP motion to strike the petition, contending their candidate statements were protected political speech and explaining why Petitioner could not prevail on the merits.  Real Parties also sought their attorney fees under the anti-SLAPP statute.

While Real Parties' anti-SLAPP motion was pending, the trial court denied Petitioner's writ petition in its entirety.  In a two-page minute order, the court found Petitioner's challenge to Pope's candidate statement was untimely, and also found Petitioner failed to present clear and convincing evidence that Woods's or McGill's candidate statements were false or misleading or attacked an opponent running for the same office.  Petitioner did not appeal this ruling.

6

Several months later, the trial court heard and denied Real Parties' anti-SLAPP motion as moot, reasoning its denial of the writ petition resolved all issues between the parties and deprived the court of jurisdiction.  The court further found that even if it had jurisdiction, it would deny the motion under the public interest litigation exemption to the anti-SLAPP statute (§ 425.17, subd. (b)).

Real Parties then filed a motion for attorney fees under the private attorney general statute (§ 1021.5), which allows a court to award attorney fees to a party who successfully enforces "an important right affecting the public interest" in certain circumstances.  They sought over $86,000 in fees.  The trial court denied their motion, finding Real Parties did not meet their burden of establishing their successful defense against the petition enforced an important right affecting the general public or resulted in a significant benefit to the public.

Real Parties appealed from both the trial court's order denying their anti-SLAPP motion and its order denying their section 1021.5 fees motion.  At Real Parties' request, we consolidated the two appeals.

## II.

### DISCUSSION

A.    *The Anti-SLAPP Motion*

1.    The Anti-SLAPP Statute Generally

The Legislature enacted the anti-SLAPP statute in 1992 in response to "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).)  Such lawsuits "are commonly known as SLAPP suits (strategic lawsuits against public participation)—litigation of a harassing nature, brought to challenge the exercise of protected free speech [or petition] rights." (*Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 665, fn. 3.)

7

The anti-SLAPP statute authorizes a special motion to strike meritless claims early in the litigation if the claims "aris[e] from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) Anti-SLAPP motions are "'intended to resolve quickly and relatively inexpensively meritless lawsuits that threaten free speech on matters of public interest.'" (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 619.)

In 2003, the Legislature enacted section 425.17, which creates several statutory exemptions to the anti-SLAPP statute. "[S]ection 425.17 excludes certain types of claims that would otherwise have fallen under the scope of the anti-SLAPP law. [Citation.] Subdivisions (b) and (c) of section 425.17, respectively, carve out exceptions to the anti-SLAPP law for (1) actions taken in the public interest and (2) actions against persons engaged in commercial speech. However, subdivision (d) of section 425.17 imposes limitations on the scope of these exceptions." (*Major v. Silna* (2005) 134 Cal.App.4th 1485, 1491 (*Major*).) We discuss the section 425.17 exceptions and its limitations in greater detail below.

Unlike the anti-SLAPP statute, which is "construed broadly" (§ 425.16, subd. (a)), section 425.17, subdivision (b)'s exemptions are ""'narrowly construed.'"" (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 419-420.) The plaintiff bears the burden of proof as to the applicability of the exemptions. (*San Diegans for Open Government v. Har Construction, Inc*. (2015) 240 Cal.App.4th 611, 622 (*Har Construction*).)

If the anti-SLAPP statute applies (i.e., if the challenged action is not exempted by section 425.17), a trial court evaluating a special motion to strike must engage in a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether

8

the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*).)

We review the trial court's order denying the anti-SLAPP motion de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325 (*Flatley*).) The statute requires us to "consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) We do not weigh the evidence. Instead, we accept as true the evidence favorable to Petitioner and evaluate Real Parties' evidence only to determine if they defeated Petitioner's evidence as a matter of law. (*Flatley, supra,* at p. 326.)

2.     Appealability

Before turning to the merits of Real Parties' appeal, we must first address the threshold issue of whether the trial court's order denying their anti-SLAPP motion is an appealable order. We conclude it is.

"A trial court's order is appealable when made so by statute. [Citation.] In civil matters, section 904.1 is the main statute that identifies appealable judgments and orders." (*Benton v. Benton* (2019) 39 Cal.App.5th 212, 216-217 (*Benton*).) Under that statute, final judgments are appealable, as are postjudgment orders. (§ 904.1, subd. (a)(1), (a)(2).) Interlocutory orders, however, generally are not appealable. (*Benton, supra,* at p. 217.)

"An appeal from an order granting or denying an anti-SLAPP motion is an exception to the nonappealability of interlocutory orders. [Citations.] Such orders generally are appealable immediately, rather than as part of an appeal from a final judgment." (*Benton, supra,* 39 Cal.App.5th at p. 217; see § 425.16, subd. (i) ["[a]n order granting or denying a special motion to strike shall be appealable under Section 904.1"];

9

§ 904.1, subd. (a)(13) [authorizing appeal "[f]rom an order granting or denying a special motion to strike under Section 425.16"].)

An order denying an anti-SLAPP motion under the section 425.17 exemptions, however, is *not* immediately appealable. Section 425.17, subdivision (e), provides: "If any trial court denies a special motion to strike on the grounds that the action or cause of action is exempt pursuant to this section, the appeal provisions in subdivision (i) of Section 425.16 and paragraph (13) of subdivision (a) of Section 904.1 do not apply to that action or cause of action."

As noted, the trial court denied Real Parties' anti-SLAPP motion as moot, reasoning the denial of the writ petition resolved all issues between the parties and deprived the court of jurisdiction. The court further found that even if it had jurisdiction, it would deny the motion under section 425.17, subdivision (b), the public interest litigation exemption to the anti-SLAPP statute.

We may undoubtedly review the portion of the trial court's order denying the motion as moot because it is the equivalent of a denial and therefore appealable under section 425.16, subdivision (i). (*White v. Lieberman* (2002) 103 Cal.App.4th 210, 220 ["[a]n order declaring the [anti-SLAPP] motion to be moot is the equivalent of a denial and is appealable"].) Petitioner contends, however, we may not review the portion of the court's order denying the motion under section 425.17, subdivision (b), because an order denying an anti-SLAPP motion under section 425.17 is, according to Petitioner, "not appealable" under section 425.17, subdivision (e).

Petitioner misreads the statute. Section 425.17, subdivision (e) simply forecloses an *immediate* right of appeal; it does not bar a later appeal from either the judgment or from postjudgment orders, as permitted under section 904.1, subdivisions (a)(1) and (a)(2). (See *Benton*, *supra,* 39 Cal.App.5th at p. 219 ["a section 425.17 denial means that 'the *immediate* appeal right no longer exists'"] [italics added]; *Goldstein v. Ralphs Grocery Co.* (2004) 122 Cal.App.4th 229, 231 ["section 425.17, subdivision (e),

10

prevents an *immediate* appeal by defendant prior to the entry of an otherwise appealable judgment"] [italics added].)

Although the trial court never entered a formal judgment on the petition for writ of mandate, its order denying the petition in its entirety "constitutes a final judgment for purposes of an appeal." (*Public Defenders' Organization v. County of Riverside* (2003) 106 Cal.App.4th 1403, 1409 (*Public Defenders*).) The court's subsequent order denying Real Parties' anti-SLAPP motion thus constitutes a postjudgment order and is appealable under section 904.1, subdivision (a)(2).

3.      The Denial of the Writ Petition Did Not Moot the Anti-SLAPP Motion

That brings us to the merits of the anti-SLAPP motion. As noted, the trial court denied Real Parties' anti-SLAPP motion as moot. It reasoned: "As a result of the Court's ruling [denying the petition for writ of mandate in its entirety], there [are] no issues remaining between the parties, as the Petition is pleaded. No relief other than changes in the ballot statements of real parties was sought. Since the entire action was disposed of by the Court's ruling on the Petition, it does not have jurisdiction to hear the anti-SLAPP Motion, notwithstanding the parties' belief to the contrary."

This was plainly erroneous. A trial court's "resolution of the underlying action does not moot a fee request under the SLAPP statute." (*Moraga-Orinda Fire Protection District v. Weir* (2004) 115 Cal.App.4th 477, 480 (*Moraga-Orinda*) [denial of petition for writ of mandate did not moot anti-SLAPP fee request]; see *Robinson v. Alameda County* (N.D. Cal. 2012) 875 F.Supp.2d 1029, 1046 [request for attorney fees under anti-SLAPP statute "is not rendered moot by a dismissal"].)

To the contrary, "because a defendant who has been sued in violation of his or her free speech rights is entitled to an award of attorney fees, the trial court *must*, upon defendant's motion for a fee award, rule on the merits of the SLAPP motion even if the matter has been dismissed prior to the hearing on that motion." (*Pfeiffer Venice Properties v. Bernard* (2002) 101 Cal.App.4th 211, 218, italics added.)

11

This requirement makes sense. If a writ petitioner files a meritless SLAPP petition, he should not be permitted to avoid the anti-SLAPP statute's attorney fee provision simply because the trial court resolves the writ petition first. A contrary rule would nullify the anti-SLAPP statute's fee provision. (See *Liu v. Moore* (1999) 69 Cal.App.4th 745, 751 [if dismissal of underlying action mooted the anti-SLAPP motion, that would "work[ ] a nullification of an important provision of section 425.16," i.e., the attorney fee provision].)

Petitioner argues the trial court correctly denied Real Parties' motion for lack of jurisdiction because the anti-SLAPP statute should not apply to statutorily-expedited writs. According to Petitioner, the purpose of the anti-SLAPP statute is to eliminate meritless SLAPP claims early in the litigation, and there was no need for an early merits determination here because a writ petition under Elections Code section 13313 provides for an expedited determination.

Again, we do not find the contention persuasive. "The Legislature clearly knows how to create an exemption from the anti-SLAPP statute when it wishes to do so." (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735.) If the Legislature had wanted to exclude expedited writ litigation from the anti-SLAPP statute, it would have said so. We decline the invitation to create an exception that does not appear in the statute. (See *Navellier, supra,* 29 Cal.4th at p. 92 ["no court has the '"power to rewrite the [anti-SLAPP] statute so as to make it conform to a presumed intention which is not expressed"'"].)

Moreover, facilitating early resolution of meritless SLAPP lawsuits is not the sole purpose of the anti-SLAPP statute. The Legislature included the fee-shifting provision in the statute to discourage SLAPP suits and encourage "private representation in SLAPP cases, including situations when a SLAPP defendant is unable to afford fees or the lack of potential monetary damages precludes a standard contingency fee arrangement." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131.) Depriving a defendant

12

of the ability to recover attorney fees when facing a meritless SLAPP writ petition would run contrary to those purposes. The trial court therefore erred in denying Real Parties' anti-SLAPP motion as moot.

4.      Section 425.17's Public Interest Exemption is Inapplicable

We next consider the applicability of the public interest litigation exemption to the anti-SLAPP statute. (See *Har Construction, supra*, 240 Cal.App.4th at p. 622 ["[b]efore engaging in [the] two-step analysis, a court must consider any claims by the plaintiff that a statutory exemption contained in section 425.17 applies"].)

As noted, subdivision (b) of section 425.17 carves out an exemption from the anti-SLAPP statute for public interest litigation, and subdivision (d) imposes certain limitations on the scope of this exemption. Specifically, subdivision (b) provides the anti-SLAPP statute "does not apply to any action brought *solely* in the public interest or on behalf of the general public if *all* of the following conditions exist: [¶] (1) The plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member. . . . [¶] (2) The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons. [and] [¶] (3) Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter." (§ 425.17, subd. (b), italics added.) As the statutory language makes clear, for subdivision (b) to apply, the action must be brought "*solely*" in the public's interest; "a litigant seeking 'any' personal relief [is barred] from relying" on the exemption. (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 316-317 (*Club Members*).)

Subdivision (d)(2) limits the scope of subdivision (b) by providing it does not apply to "[a]ny action against any person or entity based upon the creation, dissemination, exhibition, advertisement, or other similar promotion of any dramatic,

literary, musical, political, or artistic work, including, but not limited to, a motion picture or television program, or an article published in a newspaper or magazine of general circulation." (§ 425.17, subd. (d)(2).)

Here, the trial court determined the motion was barred by section 425.17, subdivision (b)'s public interest litigation exemption.[4]  Based on our de novo review of the record, we conclude the exemption does not apply.

To start, it is not clear Petitioner's writ petition challenging Real Parties' candidate statements as false or misleading qualifies as an "action brought *solely* in the public interest or on behalf of the general public" under section 425.17, subdivision (b). Petitioner filed his writ petition in an individual capacity, not on behalf of the public or other group of persons.  Although the accuracy of Real Parties' candidate statements qualifies as a public issue because it impacts a local election, the record suggests Petitioner also had a personal stake in the outcome of the litigation and, relatedly, the upcoming election.[5]  To the extent that was the case, he could not rely on section 425.17's exemptions.  (*Club Members, supra,* 45 Cal.4th at pp. 316-317 [§ 425.17, subd.

---

[4]  The court's explanation for its ruling was cursory at best.  It simply stated:  "the denied Petition fulfills the requirements of CCP §425.17.  As such, CCP §425.16 does not apply to it.  Examining the allegations of the Petition, as the Court must, and the Court has determined that the allegations satisfy the requirements of CCP §425.16(b). [*sic*]  *See, San Diegans for Open Government v. Har Construction* (2015) 240 Cal.App.4th 611, 628 [the application of the public interest exemption is determined by examining the allegations of the complaint].  The Court concludes that the same standard applies to the examination of the Petition for the purpose of determining whether the provisions of CCP §415.27(d) [*sic*], the so-called 'press exemption,' apply.  Based on examination of the allegations of the Petition, the Court concludes it does not."

[5]  True, Petitioner was not a candidate for office, but he was a prominent leader in the "Yes on B" campaign, he filed the Referendum Case challenging the ballot arguments against Measure B, *and* he filed the writ petition in the instant action challenging Real Parties' candidate statements.  Given the parties' history as political opponents and Petitioner's filing of not one, but *two* lawsuits against Pope, we question whether he met his burden of establishing his petition was an "action brought *solely* in the public interest or on behalf of the general public."

14

(b) inapplicable if plaintiff seeks *any* personal relief or advantage]; see, e.g., *Holbrook v. City of Santa Monica* (2006) 144 Cal.App.4th 1242, 1250 [§ 425.17, subd. (b) inapplicable to action by city council members under open meetings law to compel city council to end meetings by 11 p.m. because action also concerned plaintiffs' preferences for particular working hours].)

Ultimately, however, we need not decide whether Petitioner met his burden of establishing the various elements of section 425.17, subdivision (b), because even if he did, subdivision (d)(2) would bar subdivision (b)'s application. As noted, subdivision (d)(2) — which creates an exception to the exemption from anti-SLAPP coverage — provides subdivision (b) does not apply to "[a]ny action against any person . . . based upon the creation [or] dissemination . . . of any . . . political . . . work." (§ 425.17, subd. (d)(2).) Real Parties' creation and submission of candidate statements, which are by definition political writings, plainly fall within this exception. (See *Major, supra,* 134 Cal.App.4th at pp. 1493-1494, 1497 [action against supporter of city council candidates arising from his letters to residents soliciting support for candidates fell within subdivision (d)(2)].) Subdivision (d)(2) "preserves the application of the anti-SLAPP law to actions against individuals that implicate important forms of protected speech," and "'[t]he right to speak on political matters'" — including candidate qualifications — "'is the *quintessential* subject of our constitutional protections of the right of free speech.'" (*Major, supra,* at pp. 1490, 1497, italics added.) For these reasons, the public interest litigation exemption to the anti-SLAPP statute does not apply.

5.  Step One of the Anti-SLAPP Analysis: Protected Activity

Having concluded the section 425.17 exemption is inapplicable, we turn to step one of the anti-SLAPP analysis, under which we must determine whether the petition "aris[es] from any act of [Real Parties] in furtherance of [Real Parties'] right of petition or free speech under the United States Constitution or the California Constitution in

15

connection with a public issue." (§ 425.16, subd. (b)(1)). That is, did Real Parties make a threshold showing the petition arises from Real Parties' protected activity?[6]

Section 425.16, subdivision (e)(4), broadly defines protected activity to include any "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." In determining whether this particular subdivision applies, "a court must consider the context as well the content" of the challenged statement or activity. (*FilmOn.com Inc. v. DoubleVerify Inc*. (2019) 7 Cal.5th 133, 149 (*FilmOn.com*).) "'[I]t is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself *contribute* to the public debate.'" (*Id.* at p. 150, italics added.)

"What it means to 'contribute to the public debate' [citation] will perhaps differ based on the state of public discourse at a given time, and the topic of contention. But ultimately, our inquiry does not turn on a normative evaluation of the substance of the speech. We are not concerned with the social utility of the speech at issue, or the degree to which it propelled the conversation in any particular direction; rather, we examine whether a defendant—through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue one of public interest." (*FilmOn.com, supra,* at pp. 150-151.) "[A] statement is made 'in connection with' a public issue when it contributes to—that is, 'participat[es]' in or furthers—some public conversation on the

---

[6] The trial court never engaged in the two-step analysis under the anti-SLAPP statute, instead denying the motion based on mootness and the public interest litigation exemption. Because our standard of review is de novo, the facts are undisputed, and there are no contested evidentiary issues, we exercise our discretion to conduct the two-step analysis in the first instance rather than having the lower court do so first. (See *Collier v. Harris* (2015) 240 Cal.App.4th 41, 58; *Schwarzburd v. Kensington Police Protection & Community Services Dist. Bd*. (2014) 225 Cal.App.4th 1345, 1355.)

16

issue," taking into account "considerations of context—including audience, speaker, and purpose." (*Id.* at pp. 151-152.)

"Because '[t]he right to speak on political matters is the quintessential subject of our constitutional protections of the right of free speech[,]' the anti-SLAPP law has been applied to actions arising from political literature discussing the qualifications of candidates during elections." (*Major, supra,* 134 Cal.App.4th at pp. 1490-1491 [defendant's letters to residents soliciting support for city council candidates were protected activity under § 425.16, subd. (e)(4)]; see *Vogel v. Felice* (2005) 127 Cal.App.4th 1006, 1015 ["character and qualifications of a candidate for public office constitutes a 'public issue or an issue of public interest'"]; *Conroy v. Spitzer* (1999) 70 Cal.App.4th 1446, 1451 [defendant's statements about candidate's qualifications and conduct in office "obviously fell within the purview of section 425.16 because they addressed a matter of public concern"]; *Beilenson v. Superior Court* (1996) 44 Cal.App.4th 944, 949 [rejecting argument that anti-SLAPP statute "does not apply to a political campaign"]; *Matson v. Dvorak* (1995) 40 Cal.App.4th 539, 548 ["It is axiomatic that the qualifications of a declared candidate for public office is a public issue"].)

Applying these authorities here, Real Parties' candidate statements squarely qualify as protected activity because they contributed to and furthered the ongoing public debate over the use of the ARDA site and the location of the veterans cemetery, both of which were matters of public interest. While not matters of statewide concern, these issues were the subject of widespread local interest, as reflected by (1) over 19,000 signatures on the referendum drive to put Measure B on the ballot, and (2) over 45,000 votes for or against Measure B in the June 2018 election. And Real Parties' candidate statements addressing these issues were included in the official voter pamphlets mailed to

17

tens of thousands of Irvine voters.  (See Elec. Code, § 13307, subd. (b)(1).)  They thus constituted protected activity under the anti-SLAPP statute.[7]

6.  Step Two of the Anti-SLAPP Analysis:  Probability of Prevailing

"Once defendants show that the cause of action arises from protected activity, the plaintiff must demonstrate a probability of prevailing on the claim."  (*Greene v. Bank of America* (2013) 216 Cal.App.4th 454, 457.)  Petitioner did not and cannot carry that burden here because, before it ruled on Real Parties' anti-SLAPP motion, the trial court had already denied Petitioner's writ petition in its entirety, finding it to be without merit.  This earlier ruling that the writ petition had no merit foreclosed Petitioner from later establishing in his opposition to the anti-SLAPP motion that he had a probability of prevailing on the petition.  And because Petitioner did not appeal the court's denial of his writ petition, he cannot now assert the denial was improper or that he had a probability of prevailing on his petition.  (See *Club Members, supra,* 45 Cal.4th at p. 320 [plaintiff's failure to challenge order of dismissal following grant of summary judgment for defendant precluded plaintiff from challenging trial court's concurrent ruling on defendant's anti-SLAPP motion regarding plaintiff's likelihood of prevailing]; *Moraga-Orinda, supra,* 115 Cal.App.4th at p. 483 [respondents who did not appeal trial court's denial of mandamus petition challenging appellants' statements in the voter pamphlet "had no chance of establishing a probability of success" under prong two of anti-SLAPP analysis]; Burke, Anti-SLAPP Litigation (The Rutter Group ) § 5:28, p. 5-20

---

[7]  Petitioner suggests candidate statements are not protected activity because our Supreme Court has characterized candidate statements as a "nonpublic forum" (rather than a traditional public forum or limited public forum) for purposes of determining which constitutional standard applies to speech regulations.  (See *Clark v. Burleigh* (1992) 4 Cal.4th 474, 482, 489, which is not an anti-SLAPP case.)  But the fact a candidate statement is a nonpublic forum in First Amendment jurisprudence does not deprive it of First Amendment protection; it simply means restrictions on speech are subject to a "'much more limited review'" in that they "'need only be reasonable'" and viewpoint-neutral.  (*Id.* at p. 483.)

18

["Earlier court proceedings may bear on whether the plaintiff can show a probability of prevailing on prong two."]; see also *Celia S. v. Hugo H.* (2016) 3 Cal.App.5th 655, 665 [respondent who did not appeal from judgment may not urge error on appeal].) Real Parties' anti-SLAPP motion therefore should have been granted.

       7.      Anti-SLAPP Attorney Fees

The anti-SLAPP statute provides a prevailing defendant "*shall* be entitled to recover his or her attorney's fees and costs." (§ 425.16, subd. (c), italics added.) We therefore remand this matter for further proceedings consistent with this opinion.

B.     *The Motion for Attorney Fees*

We next consider the trial court's order denying Real Parties' motion for attorney fees under the private attorney general statute, section 1021.5.

       1.      The Section 1021.5 Motion for Fees Was Timely

Petitioner contends Real Parties' fees motion was untimely. This contention lacks merit. Real Parties filed their motion less than 180 days after the trial court issued its order denying the writ petition, which "constitute[d] a final judgment for purposes of an appeal." (*Public Defenders, supra,* 106 Cal.App.4th at p. 1409.) Rule 3.1702(b)(1) of the California Rules of Court links the time for filing a fees motion to the time limits for filing a notice of appeal under Rule 8.104. Under Rule 8.104(a)(1)(A-C), the deadline for filing an appeal is "180 days after entry of judgment," unless the court clerk or a party shortens the deadline to 60 days by filing and serving "a document entitled 'Notice of Entry' of judgment or a file-endorsed copy of the judgment." Because neither the court clerk nor any party did so here, the deadline to file a fees motion was 180 days after entry of judgment, or in this instance, the order denying the writ petition. Real Parties met that deadline.

2. The Private Attorney General Statute and Our Standard of Review

"'As a general rule, parties in litigation pay their own attorney's fees. [Citation.] Section 1021.5 is an exception to that rule. [Citation.]'" (*Friends of Spring Street v. Nevada City* (2019) 33 Cal.App.5th 1092, 1107 (*Friends*).)

The statute authorizes an award of fees to a "successful party" in "any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." (Code Civ. Proc., § 1021.5.)

As our Supreme Court summarized shortly after the statute was enacted, "eligibility for section 1021.5 attorney fees is established when '(1) [the moving party's] action "has resulted in the enforcement of an important right affecting the public interest," (2) "a significant benefit, whether pecuniary or nonpecuniary has been conferred on the general public or a large class of persons" and (3) "the necessity and financial burden of private enforcement are such as to make the award appropriate."'" (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1214 (*Whitley*).)

"'Derived from the judicially crafted "private attorney general doctrine" [citation], section 1021.5 is aimed at encouraging litigants to pursue meritorious public interest litigation vindicating important rights and benefitting a broad swath of citizens, and it achieves this aim by compensating successful litigants with an award of attorney's fees [citations].' [Citation.] The intent of section 1021.5 fees is not 'to punish those who violate the law but rather to ensure that those who have acted to protect public interest will not be forced to shoulder the cost of litigation.'" (*Friends, supra,* 33 Cal.App.5th at p. 1107.)

20

"'[T]he private attorney general doctrine "rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." Thus, the fundamental objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases.'" (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 565 (*Graham*).)

The statute "'draws no distinctions between plaintiffs and defendants.'" (*Willard v. Kelley* (2015) 238 Cal.App.4th 1049, 1054 (*Willard*).) Thus, a real party in interest who successfully defeats a petition for writ of mandate may recover her attorney fees under section 1021.5 if she meets all three elements of the statute. (See, e.g., *Hull v. Rossi* (1993) 13 Cal.App.4th 1763, 1765.)

"'"On review of an award [or denial] of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law."'" (*Whitley*, *supra*, 50 Cal.4th at p. 1213.) We need not decide which standard of review applies in this case because, under either standard, we reverse the trial court's order denying the motion for attorney fees and remand the matter for further consideration.

      3.     Real Parties as the Successful Party

Under section 1021.5 only the "successful party" — that is, "the party to litigation that achieves its objectives" – may recover attorney fees. (*Graham, supra,* 34 Cal.4th at p. 571.) By defeating the writ petition in its entirety, Real Parties were undoubtedly the "successful party" below.

21

4. An Important Right Affecting the Public Interest and a Significant Benefit to the Public

Section 1021.5 next requires that the action "resulted in the enforcement of an important right affecting the public interest," and "a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons." "'A benefit need not be monetary to be significant. [Citation.] Where, as here, the nonpecuniary benefit to the public is the proper enforcement of the law, the successful party must show that the law being enforced furthers a significant policy . . . because "the Legislature did not intend to authorize an award of attorney fees in every case involving a statutory violation[.]" . . . In such instances, the significant benefit and important right requirements of section 1021.5 to some extent dovetail.'" (*Friends, supra,* 33 Cal.App.5th at p. 1108.)

"In assessing whether an action has enforced an important right, 'courts should generally realistically assess the significance of that right in terms of its relationship to the achievement of fundamental legislative goals.' [Citation.] As to the benefit, it 'may be conceptual or doctrinal and need not be actual and concrete; further, the effectuation of a statutory or constitutional purpose may be sufficient . . . [However,] [t]he benefit must inure primarily to the public. [Citation.] [¶] Thus, "the statute directs the judiciary to exercise judgment in attempting to ascertain the 'strength' or 'societal importance' of the right involved."'" (*Choi v. Orange County Great Park Corp.* (2009) 175 Cal.App.4th 524, 531.)

In denying Real Parties' fee motion, the trial court ruled, without any discussion of either the facts or applicable law, that Real Parties had "not met their burden to establish that their successful defense against the Petition resulted in the enforcement of an important right affecting the general public" or "resulted in a significant benefit to the public." This ruling finds no support in the record and transgresses the confines of applicable legal principles.

22

The record demonstrates Real Parties' successful defense resulted in the enforcement of an important right affecting the public interest. "Election law litigation inherently implicates public rights." (*Adoption of Joshua S.* (2008) 42 Cal.4th 945, 958, fn. 4.) As we have previously recognized, "[t]he right of a candidate to express his or her views in a voter's pamphlet obviously affects the public interest in providing 'the voters with information to aid them in making their choices at the ballot box.' [Citation.] Moreover, the dissemination of a candidate's views confers a benefit on the general voting public, many of whom often crave, particularly in local elections, information about what the candidate *thinks* and what he or she is likely to *do* in office . . . ." (*Hammond v. Agran* (2002) 99 Cal.App.4th 115, 121 (*Hammond II*), overruled on other grounds in *Whitley*, *supra,* 50 Cal.4th 1206[8]; see *Hammond II, supra,* at p. 121, fn.2 [disapproving of trial court's comment that enforcing right to include candidate's views in a candidate statement "only 'tangentially' benefited the public"]; see also *Willard, supra,* 238 Cal.App.4th at p. 1057 [candidate who successfully defeated petition challenging description of his occupation in his candidate statement was not entitled to fees because his victory did not "shed light on his views as a candidate" and thus "did not confer a significant benefit to the electorate"].)

In this case, if Petitioner's writ petition had succeeded, it would have deprived local voters of critical information about each candidate's views — the information that is most important when casting a vote. Real Parties' litigation efforts led to the dissemination of their uncensored candidate statements to over 100,000 Irvine voters. Their successful defense of the writ petition thus enforced not only their constitutional right to communicate vital information about their views and positions to

---

[8]    *Hammond II* also held a trial court may consider the party's nonfinancial personal interests when evaluating the "necessity and financial burden" element of section 1021.5. (*Hammond II, supra,* 99 Cal.App.4th at pp. 124-128.) Our Supreme Court disapproved of that portion of *Hammond II* in *Whitley*, *supra*, 50 Cal.4th at pp. 1217, 1221-1222, 1226, fn. 4.

23

voters, but also Irvine voters' constitutional right to receive information essential to thoughtful decisionmaking and democratic self-government. These undoubtedly qualify as important rights affecting the public interest, and in enforcing those rights, Real Parties conferred a significant benefit on a large class of citizens who voted in the City of Irvine's election for mayor and city council. (See *Woodland Hills Residents Assn. v. City Council* (1979) 23 Cal.3d 917, 939-940 [courts must make a realistic assessment of the class size receiving the benefit].)

Petitioner contends the fact that Real Parties ultimately lost the election reflects there was no significant public benefit or enforcement of a public right. This argument confuses the outcome of the election with the outcome of the litigation. Even though Real Parties eventually lost the election, in the weeks leading up to the election they nevertheless enforced important political speech rights, thereby benefiting the electorate.

For these reasons, the trial court erred in finding Real Parties' successful defense of the writ petition did not "result[] in the enforcement of an important right affecting the public interest" or confer a "a significant benefit . . . on the general public or a large class of persons." (Code Civ. Proc., § 1021.5, subd. (a).) We therefore reverse the court's order denying the fees motion and remand this matter for further consideration.

On remand, the trial court should consider, among other issues, whether Real Parties established that "'"the necessity and financial burden of private enforcement are such as to make the award appropriate"'" (*Whitley*, *supra,* 50 Cal.4th at p. 1214), an issue not addressed in the court's minute order denying the fees motion. The court should also consider the reasonableness of the fees sought.

24

## III.

### DISPOSITION

The orders denying Real Parties' anti-SLAPP motion and Real Parties' attorney fees motion under section 1021.5 are reversed, and the matter is remanded for further proceedings consistent with this opinion.  Real Parties shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

ARONSON, ACTING P. J.

WE CONCUR:

THOMPSON, J.

GOETHALS, J.

25

Filed 6/17/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BILL SANDLIN,<br><br>   Plaintiff and Respondent,<br><br>     v.<br><br>MOLLY McLAUGHLIN et al.,<br><br>   Defendant and Respondent,<br><br>FRANK MCGILL et al.,<br><br>   Real Parties in Interest and Appellants. | G057264<br>(Consol. w/ G057420)<br><br>(Super. Ct. No. 30-2018-01014624)<br><br>ORDER MODIFYING OPINION WITH NO CHANGE IN JUDGMENT, CERTIFYING MODIFIED OPINION FOR PUBLICATION, AND DENYING PETITION FOR REHEARING |

The opinion filed in this matter on May 19, 2020 is hereby modified as follows:

On page 2, in the second sentence of the first paragraph, delete the word "failed" so the sentence reads: "Petitioner alleged Real Parties' candidate statements would mislead voters about the current city council's actions and the facts concerning a referendum to relocate the site of a planned state veterans cemetery."

On page 3, in the second sentence of the third paragraph, delete the word "supporting" and replace it with "opposing" so the sentence reads: "Irvine residents launched a referendum drive opposing the land swap, gathered over 19,000 signatures, and forced a referendum to relocate the cemetery onto the June 2018 ballot (Measure B)."

On page 3, in the first sentence of the fifth paragraph, delete the word "referendum" and replace it with the phrase "land swap" so the sentence reads: "Real Party Pope chaired a grassroots campaign against the land swap, with significant participation from Real Parties Woods and McGill, among others."

On page 23, in the last case citation in the first paragraph, delete the phrase "in his candidate statement" and replace it with the phrase "in his ballot designation (Elec. Code, § 13107)" so the case citation reads: "see also *Willard, supra,* 238 Cal.App.4th at p. 1057 [candidate who successfully defeated petition challenging description of his occupation in his ballot designation (Elec. Code, § 13107) was not entitled to fees because his victory did not "shed light on his views as a candidate" and thus "did not confer a significant benefit to the electorate"].)"

Additionally, on the Court's own motion, at the end of the sentence on page 23 that reads, "In this case, if Petitioner's writ petition had succeeded, it would have deprived local voters of critical information about each candidate's views — the information that is most important when casting a vote," add a footnote (footnote 9) that reads as follows: "Of course, a candidate for public office who disseminates a false candidate statement in the official voter pamphlet confers no significant benefit to the public. Here, the trial court found Petitioner failed to present clear and convincing evidence that Woods or McGill offered false candidate statements, and we accept that finding since Petitioner did not appeal the court's ruling."

Appellants, their attorneys, and nonparty Strumwasser & Wooche have requested that our opinion be certified for publication. Our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED. The opinion, as modified above, is ordered published in the Official Reports.

Appellants' petition for rehearing is DENIED. The modifications above do not change the judgment.


ARONSON, ACTING P. J.

WE CONCUR:


THOMPSON, J.


GOETHALS, J.

3